W. M. SMITH, ADMINISTRATOR, *v.* CHARLOTTE ELECTRIC RAILROAD COMPANY. ·

(Filed 9 May, 1917.)

**1. Railroads—Street Railways—Fenders—Evidence—Nonsuit.**

Where in an action to recover damages against a street car company for the negligent killing of plaintiff's intestate there is evidence tending to show that the intestate was run over while down upon the track, and that the car was equipped with an old style fender, costing about $5, which was unavailable to save a pedestrian in this position, but that with later styles of practical fenders, with which the car could have been equipped, in general use a number of years, costing about $30, the life of the intestate could have been saved, at the speed of the car at the time, defendant's motion to nonsuit should not be granted.

**2. Railroads—Street Railways—Fenders—Statutes—Exceptions — Burden of Proof.**

The burden of proof is on a street railway company to show that the Corporation Commission, in its judgment, had found it unnecessary to enforce the provisions of Revisal, sec. 2616, requiring the use of "practical fenders" on their street cars, in an action to recover damages caused by its negligence in not using them.

**8. Railroads—Street Railways—Statutes—Negligence Per Se.**

The "practical fenders" required for street cars by Revisal, sec. 3601, making the failure to use them a misdemeanor, are those which are efficient for the purpose of protecting human life, etc., or the most approved appliance in general use, and a violation of this statute is negligence *per se.*

**4. Railroads—Street Railways—Fenders—Instructions.**

Where there is evidence tending to show that the plaintiff's intestate was killed by reason of the failure of defendant street car company to use "practical fenders" on its car, an instruction to the jury to answer the issue of negligence "No" is erroneous.

**5. Railroads—Street Railways—Pedestrians—Negligence.**

Pedestrians on the streets of the city have equal rights to the use of the streets with street car companies, and the motormen on the cars are held to a higher degree of care in looking out for their safety than engineers running the trains on the right of way of a railroad company; and failure of the motormen in this respect constitutes negligence.

**6. Contributory Negligence—Evidence—Burden of Proof—Trials—Nonsuit.**

Revisal, sec. 483, places the burden of proof on defendant to show contributory negligence by the preponderance of the evidence, and defendant's motion to nonsuit on this issue should not be granted unless it appears from the plaintiff's evidence that the plaintiff contributed to his own injury as the proximate cause thereof.

**7. Railroads—Street Railways—Negligence—Trials—Evidence—Nonsuit.**

Where there is evidence that the plaintiff's intestate while down upon the track of a street railway in a city was run over and killed at a place where the view of the track was unobstructed for 200 feet, and the intestate could have been seen by the motorman in time to have avoided the injury, a nonsuit is improperly allowed.

**8. Railroads—Street Railways—Fenders—Negligence—Proximate Cause.**

Where a pedestrian, helpless and down upon a street car track in a city, has been run over and killed by defendant's street car, which would not have occurred with the use of a proper fender, the negligence of the defendant continues up to the time of the injury and is the proximate cause thereof.

APPEAL by plaintiff from *Justice, J.*, at September Term, 1916, of MECKLENBURG.

*R. S. Stewart and Cansler & Cansler for plaintiff.*
*Osborne, Cooke & Robinson for defendant.*

CLARK, C. J. This is an action for the wrongful death of the plaintiff's intestate, Charles B. Skipper, who was run over and killed by defendant's car on College Street, Charlotte, on the night of 25 December, 1913.

Without discussing the other evidence alleged as negligence, it is sufficient to consider the evidence in regard to the fender used by defendant, for if that evidence is true—and it must be taken as true on this appeal—the judgment of nonsuit was erroneous.

There was evidence tending to show that the deceased was lying on his back across the track, as his legs and lower part of his body were uninjured, there being no bruise below his waist and his pants not even torn, while both his arms were cut off and the front wheel passed entirely over his chest. His neck was broken, but there were no bruises or cuts on his head. The track was straight in the direction the car was going, so that a man's body should have been seen on the track by a motorman 200 feet from where the deceased was killed.

The evidence is that car 45, which killed the deceased, was equipped with an old-fashioned fender known as the Philadelphia or basket fender, which was the first fender ever put on street cars and which has been in use since about 1892. This fender is merely a bent piece of piping with a rope on it, and is attached to the car in such manner that it cannot be lowered without stopping the car, and can be made for about $5. The fender on the car that killed the deceased was adjusted so that the front of it was 12 to 14 inches above the car track and could not have saved a man lying on the track, no matter how slow

the car was running. Even if it touched him, the car and fender would have gone over his body. This was the evidence of the witnesses Gosney and Scott. The defendant's witness Voshall testified the same. The defendant's witness Tongue testified: "The only use of the Philadelphia fender is to save the life of people and objects that are standing up on the track." There was further evidence that this Philadelphia fender would not save a man's life if he was standing on the track unless under exceptional circumstances.

There was evidence that in December, 1913, at the time deceased was killed, there were several "practical" fenders which were in general use in the United States. Two types of these were well known and used in this State, *i. e.,* the "Providence mechanical-drop fender" and the "H. B. Life Guard." The Providence fender attached to the front of a street car is suspended from 4 to 8 inches above the rail of the track, and the motorman by pressing a pin with his foot can drop the fender instantly so that it will run along the rails, and the evidence was that in such case it would be practically impossible for a man lying down or standing up on the track to be run over by the car; and if it was running at the rate of only 4 or 5 miles an hour, as the defendant's witness testified this car was running, a man lying on the track would not be injured at all. This was testified to by several witnesses, especially by the defendant's witness Voshall, a graduate of Drexel Institute in Philadelphia, who said: "Assuming that the jury should find from the evidence in this case that this man was lying on the track in front of the street car, as it approached him, at the rate of 4 or 5 miles an hour, and this track was level, and if the car had been equipped with the Providence fender, and that fender had been dropped on the track before coming to the man lying on the track, in my opinion, it very likely would have scraped him up and saved his life. Assuming the same state of facts, I will say that if the H. B. Life Guard had been used, I think it would have picked him up and saved his life."

There was evidence that the Providence fender has been in use in Wilmington, N. C., since 1903, and that it has been generally used in the principal cities of the country. There was evidence that it was entirely practicable to equip the car which killed the deceased with the Providence fender or with the "Life Guard" either of which, if used, would save the life of a person down on the track or knocked down by the car and would prevent his being run over, whether he was standing on the track or lying down. There was evidence that "Life Guard" fender was in very general use in this country, and was used in this State in Wilmington, Goldsboro, and New Bern. There was evidence of numerous instances in which the "Providence fender" and the "Life Guard" had picked up people who were on the track and saved their

lives.  The witness Scott testified that even if the car had been running at 10 miles an hour, double the speed of this car, these fenders would save the lives of eighty people out of a hundred on the track.

There was further evidence along this line and evidence in contradiction.  It was in evidence that the fender used would cost from $5 to $10, and the Providence and Life Guard fenders of later invention would cost from $30 to $40.  The statute, Revisal 2616, provides: "All street passenger railway companies shall use practical fenders in front of all passenger cars run by them," with provision that the Corporation Commission could make exemptions when "in their judgment the enforcement of this section is unnecessary."  The burden is on the defendant to show such exemption, *Powers v. R. R.*, 166 N. C., 599, and there was no evidence to such effect.  Revisal 3601, provides that "if any city and street passenger railway company shall refuse or fail to use practical fenders in front of all passenger cars run, manipulated, or transported by them, such company shall be guilty of a misdemeanor and shall be subjected to a fine of not less than $10 or more than $100 for each day."

In *Ingle v. Light and Power Co.*, at this term, the Court said: "There was also evidence that in the violation of a law which required the use of 'practical fenders in front of all passenger cars,' this car was not so equipped, and this failure was negligence," citing *Henderson v. Traction Co.*, 132 N. C., 779; *Barnes v. R. R.*, 168 N. C., 512; *Treadwell v. R. R.*, 169 N. C., 694.  The Court has often held that when the law makes a violation of a statute a misdemeanor, such violation is negligence *per se*.  This has been notable in cases where the railroad has failed to equip their engines with headlights, handholds, automatic couplers, Miller platforms, and other safety devices required by the statute.

In *Powers v. R. R.*, 166 N. C., 599, the Court said: "This Court has always held that any act of a common carrier which is a violation of law is negligence *per se*."  In requiring "practical fenders" in front of all passenger cars the statute intended that they should be "efficient" for the purpose intended.  It certainly did not mean that there should be a sham, or colorable, compliance by putting on an antiquated, out of date, and ineffective fender, because costing only $5, when there was in general use, according to the evidence, far more efficient fenders, the cost of which is around $30, by the use of which the life of deceased might have been saved.  A human life is certainly worth the difference.  According to the evidence the fender used would pass over a man lying on the track while the others would save 80 per cent or more in such cases.

The evidence should have been submitted to the jury, and the court erred in intimating that he would instruct the jury, "if they believed

the evidence, to answer the first issue," as to the negligence of the defendant, "No." *Henderson v. R. R.,* 159 N. C., 581. There was, besides, evidence to go to the jury as to negligence of the defendant independent of the question whether the defendant had its car equipped with a practical fender. *Arrowood v. R. R.,* 126 N. C., 631; *Henderson v. R. R.,* 169 N. C., 583; *Smith v. R. R.,* 162 N. C., 29; *Hill v. R. R.,* 169 N. C., 740; *Hopkins v. R. R.,* 170 N. C., 487.

The motorman of a street car must be more diligent and careful for the safety of pedestrians than a locomotive engineer, for, as said recently in *Ingle v. Light and Power Co., supra,* the locomotive has exclusive right of way and is traveling on its own property, where, as a rule, pedestrians have no right to be, unless crossing a track or by recognized custom are using the track with the implied permission of the company, while the street railways are using the streets to which the public have the same right.

The court also erred in instructing the jury that if they believed the evidence to answer the second issue, as to contributory negligence, "Yes," for under the statute, Revisal, 483, the burden of this issue was on the defendant, who is required to prove it by the preponderance of the evidence, *Cogdell v. R. R.,* 124 N. C., 302; *Cox v. R. R.,* 123 N. C., 606; *Powell v. R. R.,* 125 N. C., 370, unless it is shown by the evidence for the plaintiff. On a motion for nonsuit only the evidence of the plaintiff, and that in the light most favorable to him, can be considered. See cases collected on that point in *Cox v. R. R., supra.*

Independent of the statute requiring the use of "practical" fenders, and even if the jury should have found that the deceased was guilty of contributory negligence, the third issue should have been submitted to a jury, whether, notwithstanding the negligence of the deceased, the defendant could have avoided killing him. In *Lloyd v. R. R.,* 118 N. C., 1010, the Court said: "It is now settled law in this State (*Pickett v. R. R.,* 117 N. C., 616) that, notwithstanding the fact that a person who is lying insensible upon railroad track is drunk, his negligence is not deemed concurrent, where the company's servants, by the exercise of ordinary care, could have seen him in time to have prevented the injury by the proper use of the appliances at their command." See citations to this case in Anno. Ed.

The Court held that a failure to equip an engine with a headlight at night is a continuing negligence. *Powell v. R. R.,* 166 N. C., 599; *Lloyd v. R. R.,* 118 N. C., 1010; *Stanley v. R. R.,* 120 N. C., 514; *Shepherd v. R. R.,* 163 N. C., 518; *Horne v. R. R.,* 170 N. C., 645. Upon the same principle the failure to use a practical fender, also required by statute, must be a continuing negligence, and actionable if the jury find that the death or injury would not have occurred if the statute had been obeyed by using the required appliances.

Without any statute, if a proper fender would have saved life, its absence was a continuing negligence which would have made the defendant liable if the proximate cause of the injury. *Greenlee v. R. R.,* 122 N. C., 977; *Troxler v. R. R.,* 124 N. C., 191; *Coley v. R. R.,* 128 N. C., 537; *Elmore v. R. R.,* 132 N. C., 865, and the long line of cases since to be found in the Anno. Ed. Indeed, as to employees when there is a failure to use the safety appliances required by statute, neither contributory negligence nor assumption of risk can even be pleaded. Laws 1913, ch. 6, Gregory's Supplement 2645a.

One of the definitions of "practical" given in Webster's Dictionary is "Valuable for use." We think, as already said, in this context it means "efficient," and is at least the equivalent of "the most approved appliance in general use and necessary for safety." *Witsell v. R. R.,* 120 N. C., 557.

The judgment of nonsuit must be set aside and the cause submitted to the jury with instructions in conformity with this opinion.

Reversed.