PAULINE PARRISH SMITH, ADMINISTRATRIX OF WELDON
PARRISH, DECEASED v. JIMMY DALE KILBURN

No. 718SC695

(Filed 2 February 1972)

1. **Rules of Civil Procedure § 50— directed verdict — consideration of evidence**

    On motion for directed verdict the evidence must be considered in the light most favorable to the plaintiff.

2. **Negligence § 29— proof of negligence — sufficiency of evidence**

    The plaintiff in a wrongful death action was not required to prove all of the acts or omissions which she alleged constituted negligence on the part of defendant; proof of negligence in only one respect was sufficient if it proximately caused the injuries and death of her intestate.

3. **Trial § 21— consideration of evidence — inconsistencies in the evidence**

    Inconsistencies in the evidence are ultimately for the jury to resolve.

4. **Automobiles § 17— right side of the highway — violation of statute**

    Violation of the statute requiring motor vehicles to be driven on the right side of the highway is negligence *per se*. G.S. 20-146(a).

5. **Automobiles § 62— striking pedestrian — motorist on left side of highway — sufficiency of evidence**

    The plaintiff in a wrongful death action offered sufficient evidence—including physical evidence of tire marks at the scene and the defendant's statements to the investigating officer—to support a jury finding that the defendant was driving on the left-hand side of the street when he struck the plaintiff's intestate; consequently, it was reversible error for the trial court to direct verdict for the defendant and to dismiss the plaintiff's action. G.S. 20-146(a).

APPEAL by plaintiff from *Cohoon, Judge,* 31 May 1971 Session of Superior Court held in WAYNE County.

This is a civil action to recover damages for the wrongful death of plaintiff's intestate, Weldon Parrish, a pedestrian, who died as a result of injuries received when he was struck by defendant's automobile at approximately 1:30 a.m., 14 July 1968, on Stronach Avenue in Goldsboro, N. C., near the point where Herring Street enters Stronach Avenue. At that point Stronach Avenue is an asphalt paved street approximately 26 feet wide which runs east and west. Herring Street is an unpaved dirt street which runs north and south and dead ends into

Stronach Avenue from the south to form a "T" intersection. The intersection was lighted by a street light, consisting of a light bulb with a shield over it, located on the north side of Stronach Avenue east of Herring Street. There were no paved sidewalks on either side of Stronach Avenue or of Herring Street. There were residences on both sides of Stronach Avenue. The posted speed limit on Stronach Avenue was 25 miles per hour. The weather was dry. Weldon Parrish resided in a house on the south side of Stronach Avenue approximately 300 feet west from the point where Herring Street enters Stronach Avenue.

Plaintiff alleged that defendant, driving westwardly on Stronach Avenue, suddenly swerved to the left of the center line of Stronach Avenue and struck Parrish, while he was in an unmarked crosswalk at a point approximately three feet from the southwestern edge of the curve at Herring Street and Stronach Avenue. Plaintiff alleged that Parrish's death was proximately caused by defendant's negligence in driving at an excessive speed, in failing to keep a proper lookout, in failing to keep his automobile under control, in driving to the left of the center line of Stronach Avenue while not in the act of passing, in operating his automobile while under the influence of alcoholic beverage, and in other respects. Defendant answered, denying material allegations of the complaint and specifically denying negligence on his part, and pleaded contributory negligence on the part of Weldon Parrish.

Plaintiff presented witnesses who testified in substance (except where quoted) as follows :

Ethel Glisson testified: She lived on Stronach Avenue across the street from the residence of Weldon Parrish. At about 1:00 or 1:30 a.m. on 14 July 1968 she was sitting with her daughter on her front porch, waiting for her son-in-law to return home. She observed a vehicle on Herring Street coming to the intersection of Herring Street and Stronach Avenue. The vehicle had its lights on and stopped on Herring Street. When she next saw it, she heard a "blunder," by which she meant it "sounded like something hit together," and the car stopped "right in the middle of the road on Stronach Avenue." A man got out of the car and came around in front of the headlights. The man was the defendant. Mrs. Glisson went in her house

and called her son and his wife, who lived next door to her. On cross-examination Mrs. Glisson testified:

> "The automobile was coming along Herring Street when I first saw it, and the lights were shining out in front of it. And it was illuminating the area around the intersection of these two streets. I did not see any person walking along. This was just a minute before I heard a bump, just a minute after the car turned and I heard something slam together and whenever I looked, the man was stopped in the middle of the road.

> "I actually saw the car when it was turning and I see it wasn't my son-in-law and so I didn't keep looking at the car. When the car turned the headlights turned toward my house. It illuminated the street in this general area. I did not see any person walking along the street in this general area. I was not looking at the car at the time of the bump.

> " . . . Just as it was turning, I took my eyes off of it because I knew it won't my son-in-law's car and I heard it, I heard the blunder, I turned around and looked and this man got out and he come around in front of the headlights.

> "The last time I saw the car it wasn't going too fast. I can't estimate mileage because I don't drive a car myself. It weren't going too fast and it weren't going too slow, just ordinary."

Pearl Glisson, Mrs. Ethel Glisson's daughter-in-law, testified that when her mother-in-law called, she and her husband left their house and went out to the street. She testified:

> "When we left our house and went out the front door we walked to the left. We saw a car sitting there in the street, and didn't see anything else in the street except him, Weldon Parrish. He was laying beside the street. Part of his body was on the street and the rest of him was laying off the street. With respect to where his body was laying off the street, Weldon Parrish's body was laying on the side that Weldon Parrish lived on. Approximately his legs was off the street. . . . The car was stopped and parked in the center of the paved surface of the road. . . .

"Weldon Parrish was laying as you come out of Herring Street. . . .

"There are no walkways of any kind for pedestrians on the side of Stronach Avenue across the street from my mother-in-law's house. I have walked up that side of Stronach Street (sic), and you have to walk on the dirt leading off from the street."

B. F. Smith, who at the time of the accident was one of the investigating police officers for the City of Goldsboro, testified that on the night of the accident he talked with the defendant and inquired as to why his vehicle had been on the left-hand side of the road and that "[h]e told me he drove to the left side of the road to avoid two pedestrians who were walking on the North side of the street, and that he struck Mr. Parrish. Mr. Parrish stepped out in front of his vehicle. He did not say anything about how long prior to the time that he had struck him that he had been driving on the left side of the road." Smith also testified that the back of defendant's car was about 80 feet from the intersection of Herring and Stronach and Parrish's body was 10 or 15 feet behind the rear of the car, that there was some dirt on Stronach just north of where Herring comes in, and he observed tire impressions in the dirt.

Smith also testified that the corner at the intersection of Herring Street and Stronach Avenue is "actually a rounded street corner," and

"There were no sidewalks on either side of Stronach Avenue. . . . Immediately South of Stronach Avenue and West on Herring Street there is some shrubbery just off the street there and at the intersection of Herring and Stronach, there is a wooden frame house. . . . The shrubbery ran parallel with Stronach Avenue. . . .

"There are houses along Stronach on both the north and south side. Dirt lies between the property line and the paved surface. I don't know how wide, I don't know where the property line is. I don't know exactly how much dirt there is between the paved surface and the shrubs I was speaking of. There was four foot of a walk, four foot of a shoulder there that night. . . . I don't recall exactly how the shoulder was. I recall from my report the measurements. There was a four-foot shoulder on each side."

O. N. Weaver, also an investigating police officer, testified that Parrish's body was lying partially on the highway and partially on the shoulder, his head and body being on the highway and his legs off the highway, approximately 40 or 50 feet from the southwestern corner of Stronach Avenue and Herring Street. Defendant's car was about two car lengths west of Parrish's body. The left front fender of the car was slightly indented, and there was blood or clothing on the exterior of the fender and some up around the windshield on the left side of the car on the driver's side. He detected the odor of alcohol on defendant's breath, but defendant walked and talked in a normal manner.

T. L. Strickland, a State Highway Patrolman who investigated the accident, testified that he found Parrish's body about 20 feet to the rear of the car which was pointing in a westerly direction in the approximate center of Stronach Avenue. The body was less than 50 feet from the intersection of Stronach Avenue and the dirt street. One shoe was on the body and one was off. The shoe which was off was still tied. The car "was situated almost in the center of the street with a slight angle of the front of the vehicle more north than the rear." There were marks on Stronach Avenue leading east away from the rear wheels of the Kilburn vehicle. The marks continued east onto where the dirt street intersects Stronach. "The dirt had been left onto the pavement and that's how you could trace them across this dirt. At that point, they stopped being black skid marks and were simply plowing marks through the dirt." Patrolman Strickland testified that he talked with defendant at the scene, and defendant stated that he had been to a friend's house and had been drinking and was en route home, that he had come up Wayne Memorial Drive and made a left turn onto Stronach, that "[a]s he approached this vicinity where the accident occurred, there was some individuals walking on the right-hand shoulder of the road in the direction he was traveling; that he pulled to the left onto the left side of the pavement to go around these people that were walking; . . . that they were in the roadway and he sounded his horn for them and just as he got out into the left lane and started around them, this man, and that was the word he used, walked right out from behind some bushes right in front of his automobile and he hit his brakes and hit the man." Patrolman Strickland also testified:

> "Mr. Kilburn did not make any statement in my presence as to how far he had traveled from the intersection of

the dirt road and Stronach Avenue before he struck Mr. Parrish. He stated that the man came out from behind some bushes right at the intersection and that he applied his brakes and struck him. At this intersection there were some bushes which he showed me as being where the man came from. These are shrub bushes. At the time they were about three feet high and they were located in the yard. From the paved portion to where they were actually located is probably eight feet.

\*    \*    \*    \*    \*

". . . The bushes from which Mr. Kilburn said the man came, they were some feet west of the intersection, about 25 feet from the true center of the intersection. The intersection makes a circle in this private residence yard. . . . There is an opening in the bushes. . . . It's just an opening in the bushes that at that point where people had been walking through. It was to the north of the house that was situated on the intersection of Herring and Stronach. This house is about 30 feet from Herring Street. The spot where Mr. Kilburn said the person came through would have been at least 30 or 35 feet from Herring Street and maybe north of Herring Street. . . .

". . . In my opinion it is 7 or 8 feet from the center of the bushes which I have referred to the south edge of the pavement of Stronach Avenue. That is the distance a person would have to walk from the bushes to get onto the edge of the surface of Stronach. . . . Between the bushes and the southern edge of the pavement of Stronach Avenue a distance of 7 or 8 feet, there is no obstruction between the bushes and the edge of the pavement for westbound traffic on Stronach Avenue."

Plaintiff also introduced evidence as to her intestate's age, life expectancy and earnings.

At the close of plaintiff's evidence defendant moved for a directed verdict on the grounds that plaintiff had not shown that defendant was guilty of any of the acts of negligence set forth in the complaint and that plaintiff's own evidence showed that her intestate was guilty of contributory negligence which was a proximate cause of his injuries and death. The motion was allowed, and from judgment directing verdict in favor of the defendant and dismissing the action, plaintiff appealed.

*Herbert B. Hulse and Sasser, Duke & Brown by John E. Duke for plaintiff appellant.*

*Dees, Dees, Smith & Powell by William W. Smith for defendant appellee.*

PARKER, Judge.

[1-3] Considering the evidence in the light most favorable to the plaintiff, as we must in passing upon the trial court's ruling on defendant's motion for a directed verdict, *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396, it is our opinion that this case should have been submitted to the jury. Plaintiff was not required to prove all of the acts or omissions which she alleged constituted negligence on the part of defendant; proof of negligence in only one respect was sufficient if it proximately caused the injuries and death of her intestate. *Funeral Home v. Pride,* 261 N.C. 723, 136 S.E. 2d 120; *Krider v. Martello,* 252 N.C. 474, 113 S.E. 2d 924. Inconsistencies in the evidence will ultimately be for the jury to resolve; for present purposes they must be resolved in plaintiff's favor. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47.

Viewing the evidence in the case before us in the light most favorable to plaintiff, resolving contradictions therein in her favor, and giving her the benefit of every reasonable inference which may be drawn therefrom, a jury could legitimately find the following:

While driving his car late at night westwardly on a city street through a residential section, defendant drove across the middle of the street and into the left-hand lane provided for eastbound traffic. In so doing, the left front side of defendant's automobile struck plaintiff's intestate with sufficient force to throw his body up against the left side of the windshield and thence over or off of the car to the edge of the pavement and partially off of the pavement on the south side of the street, inflicting injuries causing his death. This much was established by the physical evidence at the scene. After striking plaintiff's intestate, defendant's car came to a stop, still in the middle of the street and still headed in a westerly direction, but at a slight angle, its front being "more north than the rear." From this it is a legitimate inference that the car had come to its stopped position from a point farther into the left-hand lane. Defend-

ant's car came to a stop on Stronach Avenue at a point approximately 80 feet west of its intersection with Herring Street, a dirt street which enters Stronach Avenue from the south. There were tire marks on the asphalt pavement on Stronach Avenue which extended eastward from the rear wheels of the car back into the area where dirt from Herring Street came over the pavement on Stronach Avenue. From this the jury could legitimately find that defendant had driven his car in the left-hand lane of Stronach Avenue at least from the point where Herring Street intersects. Whether defendant entered Stronach Avenue from Herring Street after stopping on Herring Street, as one of plaintiff's witnesses testified, or from some street farther to the east, as defendant's statement to the police officers would indicate, may ultimately be for the jury to determine. For present purposes the discrepancy is immaterial, since under either version the jury could find that defendant was driving on the left-hand side of the street when he struck plaintiff's intestate.

[4] G.S. 20-146(a) provides, subject to certain exceptions set forth in the statute, that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway." Violation of this statute is negligence *per se* which, when it is the proximate cause of injury, constitutes actionable negligence. "When a plaintiff suing to recover damages for injuries sustained in a collision offers evidence tending to show that the collision occurred when the defendant was driving to his left of the center of the highway, such evidence makes out a *prima facie* case of actionable negligence. (Citations omitted.) The defendant, of course, may rebut the inference arising from such evidence by showing that he was on the wrong side of the road from a cause other than his own negligence." *Anderson v. Webb,* 267 N.C. 745, 148 S.E. 2d 846.

[5] Viewing the evidence in the present case in the light most favorable to plaintiff, the jury could legitimately find that defendant violated G.S. 20-146(a) and that such violation was a proximate cause of the injuries and death of her intestate. Defendant's statement to the officers that he had driven on the left because pedestrians were obstructing his right lane, if accepted as true, may show that he was on the wrong side of the road from a cause other than his own negligence. However, the officers, not the defendant, were presented by the plaintiff as her witnesses, and by examining the officers as to statements

which defendant made to them, plaintiff in no way vouched for the credibility of the defendant nor was she or the jury bound to accept his statements as the controlling truth. Even accepting his statements as true, it is our opinion this case should have been submitted to the jury, both on the issue of defendant's actionable negligence and on the issue of plaintiff's intestate's contributory negligence. In our view it was for the jury to determine whether defendant, driving at night on a 26-foot wide paved city street which had four-foot wide dirt shoulders on each side, exercised that degree of care which an ordinarily prudent man would exercise when he drove so far to the left as he did in order to pass the pedestrians who, so he told the patrolman (according to the version most favorable to the plaintiff), were "walking on the right-hand shoulder of the road in the direction he was traveling." Nor do we think the evidence so clearly establishes contributory negligence on the part of plaintiff's intestate as to make this a matter of law; it was still for the twelve.

The judgment directing verdict for defendant and dismissing plaintiff's action is

Reversed.

Judges CAMPBELL and MORRIS concur.