JAMES H. SESSOMS v. WILLIAM V. ROBERSON

No. 797SC1116

(Filed 15 July 1980)

**Automobiles §§ 62.2, 83.4– striking of pedestrian – negligence and contributory negligence**

In an action to recover for injuries received by plaintiff highway construction worker when he was struck by defendant's automobile while crossing the highway at a point beyond an intersection, plaintiff's evidence was sufficient to be submitted to the jury on issues of defendant's negligence in (1) failing to drive on the right side of the road in violation of G.S. 20-146(a); (2) failing to decrease his speed to avoid colliding with a person on the highway in violation of G.S. 20-141(m); (3) operating his automobile at an unreasonable speed under the conditions then and there existing in violation of G.S. 20-141; (4) failing to reduce his speed as he entered an intersection in violation of G.S. 20-141; (5) failing to warn plaintiff by sounding his horn in violation of G.S. 20-174(e); and (6) failing to keep a proper lookout and to keep his automobile under proper control. Furthermore, plaintiff's evidence failed to show his contributory negligence as a matter of law but presented issues as to whether plaintiff was contributorily negligent in failing to yield the right-of-way and in stepping into the path of defendant's automobile.

APPEAL by plaintiff from *Barefoot, Judge.* Judgment entered 11 July 1979 in Superior Court, NASH County. Heard in the Court of Appeals on 15 May 1980.

By a verified complaint filed 22 November, 1978, plaintiff instituted this action to recover damages for personal injuries he suffered as the result of a collision in which the car being driven by defendant struck the plaintiff as plaintiff was crossing the highway. Plaintiff alleged that the accident was proximately caused by the negligence of the defendant in that defendant failed to drive on the right side of the highway, failed to heed highway signs warning that construction work was in progress in that area, drove at an unreasonable speed under the conditions then and there existing, failed to reduce his speed as he approached and entered an intersection, failed to warn the plaintiff by sounding the car's horn, failed to keep a proper lookout and to properly control his car, and drove in a careless and reckless manner.

Defendant filed answer generally denying that he was negligent and averring that plaintiff was contributorily negligent as a matter of law in that plaintiff failed to yield the right-of-way and stepped suddenly and without warning from the shoulder of the road into the path of defendant's car.

At trial the plaintiff offered evidence tending to show the following:

Plaintiff is employed by the North Carolina Highway Commission and, on 23 November 1977, was part of a three-man crew assigned to a road project at the intersection of Rural Paved Road (RPR) 1004 and RPR 1414 in Nash County. Their task was to lay additional joints of pipe on each side of the intersection, and they had begun their job the day before by digging out the ditch to expose the pipe already there. Plaintiff's first responsibility upon arriving at the job site on November 23, as was the case the day before, was to position warning signs to the south and north of the intersection. The signs were typical road construction hazard signs, that is, they were diamond-shaped, bright orange in color, and bore the legend "Road Construction Ahead."

Testimony of various witnesses, as well as photographs and diagrams, established that RPR 1004 is a two-lane, paved secondary road that runs north and south. RPR 1414 is also a two-lane, paved road which comes into RPR 1004 from the east to form a "T" intersection. Thus, if one is travelling north on RPR 1004, RPR 1414 turns off to the right. Also, if one is travelling north on RPR 1004, approximately 300 to 400 feet south of the intersection, RPR 1004 curves slightly to the right.

Plaintiff testified that when he arrived on the job site the morning of November 23, he picked up a warning sign from the pile of dirt at the intersection, threw it over his shoulders, and headed south on Road 1004. By his calculations, he placed the sign 96 or 97 yards south of the intersection on the shoulder of Road 1004 so that it would be visible to northbound traffic. Plaintiff then returned to the intersection and picked up the second sign. He threw it across his shoulders and started walking north on the shoulder about 14 or 15 feet and then turned to

cross Road 1004 so that he could place the sign on the opposite shoulder for the benefit of southbound traffic. Before starting to cross the road, plaintiff said he stopped on the edge and looked to his left, that is, he looked back down Road 1004 to the south. He saw a car approaching in the northbound lane approximately at the point where he had placed the first sign, but "had plenty of chance to get across the road" and walked across. Plaintiff testified that he crossed the center line of Road 1004 — that is, he walked out of the northbound lane of travel and into the southbound lane — walked two to three feet into the southbound lane, and then turned right. About that time, the car driven by defendant struck him.

Plaintiff was wearing a blue uniform and a white hard hat at the time of the accident. The sign he was carrying was between him and the defendant's car. He said that "[f]rom the time I saw the vehicle and before I started across the road until the time I was struck, I did not hear a horn blow." He suffered injuries to his back, hip and face, was hospitalized for 18 days, and had to have a steel plate inserted into his hip.

State Highway Patrolman L.E. Raynor investigated the accident. He testified that it was "drizzling rain" when he arrived on the scene; that the plaintiff had already been taken to the hospital; but that the defendant was still there. The car driven by defendant, a 1976 Ford Thunderbird, was located approximatley 100 feet north of the intersection. It was headed north, but was situated in the southbound lane of travel across the center line. Trooper Raynor observed slight damage to the "left front of the vehicle where the paint was scratched ... ." He recalled that the warning sign placed south of the intersection for northbound traffic was clearly visible and could be seen "before you got into that curve" on Road 1004.

Trooper Raynor talked to the defendant who told him that the collision had occurred "just left of the center line" in the southbound lane of travel on Road 1004. Defendant told the officer that the plaintiff walked in front of him and that he hit the plaintiff when he swerved his car to the left to try to avoid hitting the plaintiff. Defendant estimated his speed to be about 40 miles per hour just prior to the accident.

Plaintiff also offered the testimony of Barry Driver, a member of the crew assigned to this particular road project and plaintiff's superior on the job. Driver testified that he was standing on Road 1414 talking to the other crew member, that he "glimpsed" the car as it passed the intersection, and turned to face Road 1004 just as the car passed. He described what he saw as follows:

> When I first turned around, James [plaintiff] was in the right-hand lane, northbound lane of Road 1004, probably a couple of steps from the center line. . . . He was walking kind of diagonally when I first saw him across there and he kept walking and from the time I looked at him, he kept walking before the car hit him. Yes, I saw the car when it actually struck Mr. Sessoms. Mr. Sessoms was across the center line when the car struck him. The car was approximately straddle of the center line of the road when it hit James.
>
> . . .
>
> From the time I glimpsed the car to where it hit James, the car was in the center of the road. . . .

In Driver's opinion the car was travelling at approximately 40 miles per hour when he first saw it and about 15 miles per hour when it struck the plaintiff. He said he did not hear a horn blow. Driver also testified that the warning sign which plaintiff had placed south of the intersection for northbound traffic was situated 110 yards from the intersection, that the distance from where he was standing on Road 1414 to where plaintiff was struck on Road 1004 was approximatley 50 yards, and that he was standing about 30 feet from the center of Road 1004. He said the road was wet.

Plaintiff called defendant as an adverse witness, and he testified in substance that he didn't remember seeing any kind of sign along the highway; that he first saw the plaintiff when he came out of the curve on Road 1004; and that he slowed down to 40 or 45 miles per hour as he came around the curve because it was raining. When defendant was asked whether he had stated in his deposition that plaintiff was in the center of the

highway when he passed the intersection, defendant replied, "Possible. I could have said that. . . . I don't know for sure. He was around the center lane somewhere."

Defendant testified further that he "tooted" his horn when he first saw the plaintiff standing on the shoulder, that plaintiff stepped out onto the highway and he "tooted" his horn again and proceeded, and that he blew the horn about the same time he applied his brakes. He said he tried to turn his car to the right when he saw the plaintiff in the middle of the road, but that the car "went into a slide. . .it just skidded straight." He testified that there were no cars ahead of him, nor were there any obstructions either on the paved portion of the highway or on the shoulder.

At the close of the plaintiff's evidence, the court allowed the defendant's motion for a directed verdict. From a judgment entered thereon, plaintiff appealed.

*Biggs, Meadows, Batts, Etheridge & Winberry, by William D. Etheridge and Auley M. Crouch III, for the plaintiff appellant.*

*Battle, Winslow, Scott & Wiley, by Robert L. Spencer, for the defendant appellee.*

ERWIN, Judge.

The sole issue presented by this appeal is whether the entry of a directed verdict for defendant was appropriate. We say, no.

The legal standard for gauging the evidence on a motion for a directed verdict is well established and hardly needs repeating: "[A]ll evidence which supports plaintiff's claim must be taken as true and viewed in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in his favor." *Maness v. Fowler-Jones Construction Co.,* 10 N.C. App. 592, 595, 179 S.E. 2d 816, 818, *cert. denied,* 278 N.C. 522, 180 S.E. 2d 610 (1971). The issue in the case at bar is thus refined to a determination, first, whether the plaintiff has offered sufficient evidence which,

considered in accordance with the above test, tends to show that his injuries were proximately caused by the negligence of the defendant, and, nevertheless, whether the evidence establishes as a matter of law that the plaintiff failed to exercise the requisite degree of ordinary care for his own safety. *See Ryder v. Benfield*, 43 N.C. App. 278, 258 S.E. 2d 849 (1979). In our opinion, the evidence is such as to permit different inferences reasonably to be drawn as to each issue and, thus, both questions should have been submitted to the jury.

It cannot be denied that certain duties existing by virtue of statute as well as the common law were imposed upon both plaintiff and defendant under the factual situation present in this case. For example, pertinent provisions of G.S. § 20-174 require pedestrians who cross a roadway "at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection" to yield the right-of-way to all vehicles upon the roadway. Notwithstanding this duty imposed upon the pedestrian, the statute mandates that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary... ." G.S. § 20-141 also imposes a general standard of due care with respect to speed and requires that a motorist not operate his vehicle "at a speed greater than is reasonable and prudent under the conditions then existing." Obviously, this duty exists notwithstanding that the motorist's actual speed is less than the posted speed limit. *See Kolman v. Silbert*, 219 N.C. 134, 12 S.E. 2d 915 (1941). Moreover, this provision of our highway law requires the motorist to decrease his speed when special hazards exist by reason of weather and highway conditions, to the end that others using the highway may not be injured. *Williams v. Tucker*, 259 N.C. 214, 130 S.C. 2d 306 (1963).

The evidence in this case also clearly implicates the following provisions of G.S. § 20–146:

> (a) Upon all [highways] of sufficient width a vehicle shall be driven upon the right half of the highway ...
> . . .

Sessoms v. Roberson

(d) Whenever any street has been divided into two or more clearly marked lanes for traffic, the following rules in addition ... shall apply.

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

The purpose of the above–quoted statute is to proctect occupants of other vehicles and pedestrians. *Powell v. Clark*, 255 N.C. 707, 122 S.E. 2d 706 (1961). Our Courts have consistently held that the violation of this section constitutes negligence *per se*, and when it is the proximate cause of injury or damage, such violation is actionable negligence. *See, e.g., Reeves v. Hill* 272 N.C. 352, 158 S.E. 2d 529 (1968). Whether the violation is the proximate cause of an injury is for the jury to determine. *Stephens v. Southern Oil Company of North Carolina, Inc.*, 259 N.C. 456, 131 S.E. 2d 39 (1963). "When a plaintiff suing to recover damages for injuries sustained in a collision offers evidence tending to show that the collision occurred when the defendant was driving to his left of the center of the highway, such evidence makes out a *prima facie* case of actionable negligence." *Anderson v. Webb.* 267 N.C. 745, 749, 148 S.E. 2d 846, 849 (1966). Of course, the defendant may rebut the inferences arising from such evidence by showing that he was driving on the wrong side of the road for reasons other than his own negligence, but, in such a case, such showing by the defendant serves merely to raise an issue of credibility for the jury to resolve. *See Smith v. Kilburn* 13 N.C. App. 449, 186 S.E. 2d 214, *cert. denied*, 281 N.C. 155, 187 S.E. 2d 586 (1972).

In the case before us, all the evidence shows that defendant's car struck the plaintiff to the left of the center line. Indeed, defendant concedes that as a fact. However, he sought to explain that he crossed the center line in an attempt to avoid hitting the plaintiff. In our opinion, this evidence alone, on the authority of *Anderson v. Webb* and *Smith v. Kilburn, supra* is sufficient to require the submission of this case to the jury.

Additionally, we find the evidence, when considered in the

light most favorable to the plaintiff, sufficient to raise *inter alia* the following inferences:

1. That the defendant operated his car at a speed that was greater than was reasonable and prudent under the conditions then and there existing, with respect to weather conditions and possible road construction hazards, in violation of G.S. § 20-141.

2. That the defendant failed to decrease his speed as he approached, entered and transversed an intersection, in violation of G.S. § 20-141.

3. That the defendant failed to decrease his speed as necessary to avoid colliding with a person on or entering the highway, in violation of G.S. § 20-141(m).

4. That the defendant failed to sound his horn to warn the plaintiff of his approach, in violation of G.S. § 20-174(e).

5. That the defendant failed to exercise due care to avoid hitting the plaintiff in that he failed to keep a proper lookout, or to keep his car under proper control.

From these inferences the jury could find that the defendant was negligent and that his negligence was a proximate cause of plaintiff's injuries.

Defendant contends, however, that the evidence establishes as a matter of law that the plaintiff was contributorily negligent so as to bar plaintiff's right to recover. We agree that the evidence is sufficient to raise an inference, among others, that the plaintiff failed to yield the right-of-way and that, without due regard for his own safety, he stepped into the path of the defendant's car. But, as we have shown above, the evidence in this case is such as to raise a number of reasonable inferences. Rational persons could logically draw different conclusions as to whether plaintiff's injuries proximately resulted from the negligence of the defendant or from the plaintiff's contributory

negligence. "[O]nly when 'all the evidence so clearly estab-
lishes [plaintiff's] failure to yield the right of way as one of
the proximate causes of his injuries *that no other reason-
able conclusion is possible,*'" *Ragland v. Moore,* 229 N.C.
360, 369, 261 S.E. 2d 666, 671 (1980) [emphasis added] [quot-
ing from *Blake v. Mallard,* 262 N.C. 62, 136 S.E. 2d 214
(1964), will a directed verdict against the plaintiff be
appropriate. In this case the evidence is for the jury as to
plaintiff's contributory negligence, if any, as well as defend-
ant's negligence, if any. We cannot imagine a more clear-
cut case for the twelve.

   The judgement directing a verdict for the defendant is
reversed.

   Reversed.

   Judges PARKER and VAUGHN concur.