***********
The Full Commission reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn, the records contained in the Commission's file in this matter, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Decision and Order, except for minor modifications. Accordingly, the Full Commission affirms the Decision and Order of Deputy Commissioner Glenn.
 ***********
Based upon all the credible and competent evidence presented at hearing and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, Randy Lee Barnard, Sr., is a resident of Pamlico County, North Carolina.
2. On February 1, 2002, Plaintiff was the owner and operator of a 2002 Honda motorcycle, bearing North Carolina license number 1K6713 for the year 2002. Plaintiff departed from the facilities of Craven County Motor Sports, off U.S. Highway 70 east of New Bern, North Carolina, with the intent of going west on U.S. Highway 70 toward New Bern, North Carolina. At that particular location, Highway 70 is a divided highway with two lanes for eastbound traffic with a left-hand turn lane, two lanes for westbound traffic with a left-hand turn lane, and a grassy median between the eastbound and westbound lanes with a median crossover.
3. Plaintiff testified before the Deputy Commissioner that he checked for traffic and crossed the eastbound lanes of Highway 70, stopping in the median crossover near its eastern *Page 3 
margin. There he waited as a car in the westbound left-turn lane passed in front of him and turned into the median crossover beside him. Once the car had passed him, Plaintiff checked for oncoming westbound traffic and saw a tractor-trailer type truck approaching from the east in the outside (right-hand) lane. After determining that the inside (left-hand) westbound lane of travel was clear, Plaintiff pulled into the inside westbound lane of Highway 70 and began to accelerate. As Plaintiff began to accelerate down the middle of the inside lane of travel, the tractor-trailer truck, pulling a lowboy trailer, was in the act of passing him in the outside lane of travel. According to Plaintiff, the truck, operated by Defendant North Carolina Department of Transportation's employee Robert Wayne Corey, suddenly and without warning began to merge from the outside lane into the inside lane occupied by Plaintiff. Plaintiff attempted to avoid the truck, but the left side of the lowboy trailer struck the right rear of Plaintiff's motorcycle. The next thing Plaintiff remembered, he was in the hospital. Plaintiff could not say how far he had traveled in the inside lane of Highway 70 westbound before he was struck, or how fast he had been going at the time.
4. Mr. Corey testified before the Deputy Commissioner that, on February 1, 2002, he was driving a tractor-trailer truck with a lowboy trailer for Defendant westbound on U.S Highway 70. Mr. Corey acknowledged that, although he had been driving tractor-trailer trucks pulling lowboy trailers for at least a year, his Class A Commercial Driver License (CDL) at the time of the accident included a restriction of no trailers. Mr. Corey testified that he had been driving in the outside lane of Highway 70 westbound at the intersection with Thurman Road, about 3700 feet before the median crossover at Craven County Motor Sports, and that he had shifted from the outside lane to the inside lane due to traffic on Highway 70 near the Craven County fairgrounds, approximately 1000 feet from the median crossover and at the top of a hill *Page 4 
or grade in Highway 70. Mr. Corey explained that the tractor-trailer rig was about 60 feet long, and that shifting lanes took 20 to 30 feet of roadway.
5. Mr. Corey testified that he was traveling between 35 and 45 mph when he passed Plaintiff sitting stopped on his motorcycle on the west side of the median crossover. Mr. Corey passed by Plaintiff in the cab of his truck, and then watched in his rearview mirror as the front tire of Plaintiff's motorcycle hit the rear tires of the lowboy trailer about 15 feet from its end. The substance of Mr. Corey's testimony appears to be that Plaintiff pulled out of the median crossover and drove directly into the side of the lowboy trailer, with the impact taking place within 10 feet of the western edge of the median crossover. Mr. Corey testified that he began braking immediately after Plaintiff's motorcycle hit the lowboy trailer, stopped the truck on the median of Highway 70, and ran back to check on Plaintiff.
6. Riding with Mr. Corey at the time of the accident was Edward Thomas Wright, an employee of Defendant with a Class A CDL driver's license with no restrictions. Mr. Wright testified that he remembered that the truck was in the inside lane of Highway 70 westbound after passing through the Thurman Road intersection, and although he could not recall just when the truck had moved to the inside lane, it was already in the inside lane when the truck passed the Craven County fairgrounds, which was about when Mr. Wright first saw Plaintiff's motorcycle. Mr. Wright testified that Plaintiff's motorcycle was still sitting in the median crossover when the cab of the truck passed, and that the next thing Mr. Wright knew, the accident had happened and Mr. Corey was pulling the truck over to the side of the road. Mr. Wright's understanding of the accident, substantially in accord with Mr. Corey's, was that Plaintiff pulled out of the median crossover into the inside lane of Highway 70 westbound before the lowboy trailer had completely passed him, resulting in Plaintiff hitting the last few feet of the trailer. *Page 5 
7. Richard K. Lore, a retired psychology professor, testified that he and his wife had been following behind Mr. Corey on Highway 70 in the inside lane for two to three minutes, since before Thurman Road, and were traveling about 50 mph when the accident happened. Mr. Lore never saw Plaintiff stopped in the median crossover. Mr. Lore testified instead that he was 125 to 200 feet behind Mr. Corey's truck in the inside westbound lane of Highway 70 when Plaintiff "appeared out of nowhere" on Mr. Lore's left, passing Mr. Lore in the narrow asphalt strip between the inside lane and the grassy median. Mr. Lore explained that Plaintiff then hit the end of Mr. Corey's lowboy trailer at an oblique angle, sending Plaintiff's motorcycle into a wobble for about 30 feet before Plaintiff finally lost control and crashed in the grassy median. Mr. Lore did not have to change lanes to avoid Plaintiff or Plaintiff's motorcycle because they landed in the median, not in the inside lane.
8. Linda Ruth C. Lore testified that she had been riding with her husband behind Mr. Corey's truck in the inside lane of Highway 70 westbound for a number of miles, since before Thurman Road, when she heard her husband scream something and, turning, saw debris going up in the air from the motorcycle accident.
9. Josiah Gene McKamey, a marine stationed in North Carolina at the time of the accident, testified that he saw Plaintiff leave Craven County Motor Sports and cross the eastbound lanes of Highway 70. Mr. McKamey then turned away, but he heard Plaintiff merge into traffic on Highway 70 westbound. Mr. McKamey testified that he heard the engine of Plaintiff's motorcycle rev for maybe a second and a half, including a shift into second gear, before hearing the sound of the accident, at which point Mr. McKamey turned in time to see Plaintiff flying through the air. Mr. McKamey ran to help Plaintiff, whom he described as lying in the middle of the inside lane of Highway 70 westbound. *Page 6 
10. Joseph Thomas Hoffman was a North Carolina Highway Patrol trooper at the time of the accident, with nearly twenty years of experience in the Highway Patrol and training and certification in accident reconstruction. Mr. Hoffman arrived at the scene of the accident shortly after it occurred, and took measurements and performed an investigation of the accident, although the actual accident report was later completed by an officer of the New Bern Police Department. Mr. Hoffman described a pair of skid marks in the inside lane of Highway 70 westbound, with the left skid mark, slightly longer than the right skid mark, beginning 80 feet 11 inches beyond the westernmost end of the median crossover and 5 feet 1 inch in from the edge of the lane, and continuing for 346 feet 7 inches down the inside lane. Mr. Hoffman testified that the skid marks were consistent with the tires of the lowboy trailer.
11. Mr. Hoffman further offered the Deputy Commissioner his opinion, based on his experience as a highway patrolman and his certification in accident reconstruction, as to the location of the impact between Defendant's truck and Plaintiff's motorcycle, and as to the position of Defendant's truck at the time of the accident in regard to the inside and outside lanes of Highway 70 westbound. However, because Plaintiff's counsel never tendered Mr. Hoffman as an expert in accident reconstruction before the Commission, and because Defendant's counsel appropriately objected to Mr. Hoffman's testimony on that basis, the Full Commission declines to consider Mr. Hoffman's opinion testimony regarding matters beyond those he experienced and measured directly.
12. The Full Commission finds, based on the skid marks described by Mr. Hoffman and the testimony of Mr. Corey, that Mr. Corey witnessed the impact of Plaintiff's motorcycle with the lowboy trailer and immediately began braking Defendant's truck. On the basis of the testimony before the Full Commission that Plaintiff's motorcycle struck the lowboy trailer *Page 7 
approximately 15 feet from its end, the Full Commission finds, based on the greater weight of the evidence before it, that Plaintiff's motorcycle impacted with the lowboy trailer approximately 80 to 100 feet west of the westernmost end of the median crossover.
13. Plaintiff introduced photographs of the condition of his motorcycle following the accident. The photographs show significant damage to the right rear of Plaintiff's motorcycle, including a crease in the rear fender, rubber on the taillight, and a missing rear right turn signal. The photographs further show damage to the right side of Plaintiff's motorcycle, including damage to the gas tank and a bent brake pedal. However, the photographs show virtually no damage to the front of the motorcycle, including an intact front windshield and fender and a front headlight with only a small scrape in its chrome.
14. The Full Commission gives reduced weight to the descriptions of the accident by Mr. Corey, Mr. Wright, and Mr. and Mrs. Lore, because their testimony is inconsistent with the physical evidence of the accident presented before the Commission. If, as Mr. Lore testified, Plaintiff had accelerated from the median crossover sufficiently to pass Mr. and Mrs. Lore and then impact with the lowboy trailer some 125 to 200 feet in front of them, the accident would necessarily have taken place considerably farther from the median crossover than 80 to 100 feet. However, if, as Mr. Corey and Mr. Wright testified, Plaintiff was stopped in the median crossover at the time the cab of the truck passed him, and Plaintiff then accelerated out of the median crossover directly into the lowboy trailer before it had fully passed him, the accident would have taken place within mere feet of the median crossover, considerably less than 80 to 100 feet. Furthermore, Mr. Corey, Mr. Wright, and Mr. Lore all described Plaintiff's motorcycle striking Defendant's truck largely head-on, which is inconsistent with the evidence showing that *Page 8 
Plaintiff's motorcycle was substantially undamaged on its front, with the considerable majority of its damage to the motorcycle's rear.
15. The Full Commission gives increased weight to the descriptions of the accident by Plaintiff and Mr. McKamey, because their testimony is consistent with the physical evidence of the accident presented before the Commission. Mr. McKamey's description of hearing Plaintiff accelerate for about a second and a half and shift from first to second gear before striking Defendant's truck is broadly consistent with an impact taking place between 80 and 100 feet from the median crossover, given that a vehicle traveling 35 mph moves 51.3 feet per second. Although Plaintiff could not remember how far he had traveled on Highway 70 before being hit by Defendant's truck, and could not recall how fast he was traveling at the time, Plaintiff's description of being hit by the lowboy trailer from behind and from the right is substantially consistent with the damage to Plaintiff's motorcycle as shown to the Commission.
16. The Full Commission therefore finds, based on the greater weight of the evidence before it, that Plaintiff properly ascertained that the inside lane of Highway 70 westbound was free of oncoming vehicles, and began traveling within that lane; that Mr. Corey was driving Defendant's truck in the outside lane of Highway 70 westbound, and encroached upon Plaintiff's use of the inside lane as he began to pass Plaintiff; and that the impact between Plaintiff's motorcycle and Defendant's lowboy trailer was a direct and proximate result of Mr. Corey's encroachment upon Plaintiff's use of the inside lane.
17. Following the accident, Plaintiff was initially attended to by emergency medical personnel from Craven Regional Medical Center. However, due to the nature and severity of his injuries, Plaintiff was transported from the accident scene directly to Pitt County Memorial Hospital by life flight helicopter. *Page 9 
18. Plaintiff was initially hospitalized at Pitt County Memorial Hospital, Greenville, North Carolina, from February 1, 2002, until March 2, 2002. Plaintiff underwent a right frontal craniotomy with evacuation of intracerebral hematoma, partial right frontal lumpectomy, and evaluation of depressed skull fracture and closure of dural laceration, by Dr. Lee on February 1, 2002. Plaintiff also had cranialization of the frontal sinus with repair of frontal sinus by Dr. Rizzuti. In addition, Plaintiff had bilateral endoscopic repair of medial cranial fossa defects with closure of cerebrospinal fluid rhinorrhea by Dr. Albernaz. Plaintiff was also found to have a damaged optic nerve and was treated with steroid protocol for ocular nerve impingement. A CT scan of Plaintiff's neck, chest, pelvis, and abdomen were negative. Upon x-ray, Plaintiff was found to have a distal dislocation of the proximal interphalangeal joint of the fifth finger on the left hand and a distal nondisplaced fracture of the distal fifth metatarsal shift on the right foot. He also had an interarticular fracture of the distal radius of the left forearm. Plaintiff had a right fifth toe repair and reduction external of the left radius.
19. Plaintiff was in the Intensive Care Unit of Pitt County Memorial Hospital for a week and then transferred to 2East on February 7, 2002, when he was stabilized. Plaintiff had a cisternogram on February 18, 2002, which revealed three possible sites of leaking cerebrospinal fluid. Plaintiff also had continuous nasal cerebrospinal fluid leaking. Plaintiff had a lumbar drain placed by Dr. Lee on February 20, 2002, for cerebrospinal fluid rhinorrhea. Plaintiff also had nasal packing which was removed on February 28, 2002. The lumbar drain was removed on March 1, 2002. Plaintiff was discharged on March 2, 2002.
20. On March 13, 2002, Plaintiff was readmitted to Pitt County Memorial Hospital as he had redeveloped cerebrospinal fluid rhinorrhea, which prompted additional surgery by *Page 10 
Dr. Albernaz. Plaintiff was discharged from Pitt County Memorial Hospital on March 19, 2002. After his discharge on March 19, 2002, Plaintiff was seen by numerous medical providers. 21. Plaintiff redeveloped cerebrospinal fluid rhinorrhea in a different parasinus roof than the initial two leaks, which prompted a third hospitalization from May 10, 2002, through May 12, 2002, for the repair of the leak. In addition, Plaintiff developed an infection of the right temporal area of the skull. Plaintiff has had numerous doctor visits since the accident.
22. The Full Commission finds that, as a direct and proximate result of his accident, Plaintiff sustained severe personal injuries including multiple facial fractures, right frontal intracerebral hemotoma with basal frontal contusions, multiple fractures of the frontal sinus, right frontal depressed scalp fracture, frontal sinus and basilar scalp fractures, fracture of the left distal radius, dislocation of the right proximal interphalangeal fifth digit, fracture of the right fifth metatarsal, cerebrospinal fluid rhinorrhea, chronic back pain, and multiple bruises and abrasions on his upper torso, arms, and face. 23. Plaintiff has suffered significant physical pain and mental suffering as a result of the injuries sustained in the accident of February 1, 2002. Plaintiff still continues to suffer significant physical pain on a daily basis. Plaintiff's pain, in combination with the injury to the Plaintiff's brain, has prevented Plaintiff from engaging in many of the regular activities of daily living that he enjoyed prior to the accident. In addition, the resulting injuries and disabilities have caused Plaintiff to experience significant mental suffering and depression.
24. The Full Commission finds that, as a direct and proximate result of the accident and the medical treatment thereby necessitated, Plaintiff has incurred expenses for medical care and attention in the amount of $224,597.86. *Page 11 
25. For several years prior to the accident and at the time of the accident, Plaintiff was employed with PCS Phosphate in Aurora, North Carolina, as a heavy equipment operator. In 1999, Plaintiff earned $47,469.88; $47,982.73 in 2000; and $42,420.33 in 2001. Plaintiff has been out of work since the date of the accident and is totally disabled from performing any gainful employment as a result of the accident. As of the date of the hearing before the Deputy Commissioner, Plaintiff was 58 years of age with his date of birth being October 3, 1947, giving Plaintiff a life expectancy of 22.7 years pursuant to the mortality tables contained in N.C. Gen. Stat. § 8-46. Plaintiff intended to work at PCS Phosphate until he was 66 years of age, at which time he would qualify for full retirement.
26. The Full Commission finds that, as a direct and proximate result of the accident, as of the date of the hearing before the Deputy Commissioner, Plaintiff has sustained past lost wages in the amount of $188,000, and will sustain a future loss of wages over the following eight years in the amount of $320,000. Plaintiff's past lost wages are not reduced to present value as the loss has already been incurred. Plaintiff's future wages are to be reduced to present value.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 143-291(a) confers upon the Industrial Commission jurisdiction to hear negligence claims against "the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkir v. N.C. State University, 321 N.C. 706, 709,365 S.E.2d 898, 900 (1988). *Page 12 
2. N.C. Gen. Stat. § 20-146.1(a) provides that "[a]ll motorcycles are entitled to full use of a lane and no motor vehicle shall be driven in such a manner as to deprive any motorcycle of the full use of a lane." N.C. Gen. Stat. § 20-146(d)(1) provides that, "[w]henever any street has been divided into two or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." As the Court of Appeals has noted, "`the violation of [N.C.G.S. § 20-146(d)(1)] constitutes negligence per se, and when it is the proximate cause of injury or damage, such violation is actionable negligence.'" Ligon v.Strickland, 176 N.C.App. 132, 136, 625 S.E.2d 824, 828 (2006) (quotingSessoms v. Roberson, 47 N.C.App. 573, 268 S.E.2d 24 (1980)). Because Mr. Corey encroached upon Plaintiff's use of the inside lane of Highway 70 westbound; because Defendant has failed to show that Mr. Corey first ascertained that such movement could be made with safety, and in fact denies that any such encroachment ever took place; and because Mr. Corey's encroachment upon Plaintiff's use of the inside lane proximately caused Plaintiff's injuries, the Full Commission concludes that Plaintiff's injuries are the result of the negligence of Mr. Corey, and that such negligence is imputed to Defendant under the doctrine ofrespondeat superior. See Johnson v. Lamb, 273 N.C. 701, 707,161 S.E.2d 131, 137 (1968).
3. The Full Commission further concludes that, even had the Full Commission found Mr. Corey's testimony credible, Mr. Corey's driving of a truck pulling a lowboy trailer, while in possession of a Commercial Driver License with a restriction of no trailers, constituted negligenceper se. "The violation of a statute which imposes a duty upon the defendant in order to promote the safety of others, including the plaintiff, is negligence per se." Ratliff v. Duke Power Co.,268 N.C. 605, 151 S.E.2d 641 (1966). Because the stated purpose of the *Page 13 
Commercial Driver License Act is "to implement the federal Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. Chapter 36, and reduce or prevent commercial motor vehicle accidents, fatalities, and injuries," N.C. Gen. Stat. § 20-31.11, the Full Commission concludes that N.C. Gen. Stat. § 20-31.12(a) is a safety statute:
 On or after April 1, 1992, no person shall operate a commercial motor vehicle on the highways of this State unless he has first been issued and is in immediate possession of a commercial drivers license with applicable endorsements valid for the vehicle he is driving; provided, a person may operate a commercial motor vehicle after being issued and while in possession of a commercial driver learner's permit and while accompanied by the holder of a commercial drivers license valid for the vehicle being driven.
Although Mr. Corey was accompanied by Mr. Wright, who did possess a CDL valid for Defendant's truck at the time of the accident, Defendant has presented no evidence that Mr. Corey was in possession of a CDL learner's permit at that time. Accordingly, Mr. Corey, by driving Defendant's tractor-trailer truck despite a restriction of no trailers on his CDL, violated N.C. Gen. Stat. § 20-31.12(a), and was therefore negligent per se. Because the lowboy trailer being pulled by Defendant's truck was indisputably the proximate cause of Plaintiff's injuries, Mr. Corey's negligence is actionable. See also, N.C. Gen. Stat. §20-37.21(a) ("Any person who drives a commercial motor vehicle in violation of G.S. 20-37.12 shall be guilty of a Class 3 misdemeanor.");Smith v. Charlotte Electric Ry. Co., 173 N.C. 489, 92 S.E. 382 (1917) ("The court has often held that when the law makes a violation of a statute a misdemeanor, such violation is negligence per se.")
4. The Full Commission concludes, based on its findings of fact, that Plaintiff is not contributorily negligent in regard to his injuries.
 "Contributory negligence is `negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant . . . to produce the injury of which the plaintiff *Page 14 
complains.'" To establish contributory negligence, a defendant must demonstrate: "(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury."
Seay v. Snyder, ___ N.C. App. ___. ___, 638 S.E.2d 584, 587 (2007) (citations omitted). Because the Full Commission has found that Plaintiff's use of the inside lane of Highway 70 westbound was appropriate and justified, Defendant has failed to prove any want of due care on the part of Plaintiff that proximately led to Plaintiff's injuries.
5. Plaintiff is entitled to recover compensatory damages for his medical expenses, past and future lost earnings, pain and suffering, and permanent injury in an amount of at least $500,000. N.C. Gen. Stat. §§ 143-291(a), 143-299.2(a)
6. Defendant shall be liable for the costs of this action. N.C. Gen. Stat. § 143-291.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff, Randy Lee Barnard, Sr., shall have and recover of the State of North Carolina the sum of $500,000 for compensatory damages.
2. The costs of this action are taxed against the State of North Carolina.
This the 19th day of March, 2007.
 S/_____________ BUCK LATTIMORE CHAIRMAN
 CONCURRING: *Page 15 
 S/______________ DIANE C. SELLERS COMMISSIONER *Page 1