JAMES EDD LIGON, JR., Plaintiff v. MATTHEW ALLEN STRICKLAND and GERALD ALLEN STRICKLAND, Defendants

No. COA04-822

(Filed 21 February 2006)

**1. Motor Vehicles— crossing center line and striking pedestrian—directed verdict denied**

A directed verdict for defendants was correctly denied in a negligence action arising from a pedestrian being struck at night by an automobile. The evidence permits an inference that defendant driver was negligent in crossing the center line and completely leaving the road to avoid a roaming black dog.

**2. Motor Vehicles— pedestrian struck by automobile—contributory negligence**

The trial court erred by not submitting contributory negligence to the jury where there was evidence that plaintiff was walking along a road at night, intoxicated, and in dark clothes, and that he was struck in the road.

**3. Motor Vehicles— instructions—sudden emergency—swerving to avoid black dog**

In a case remanded on other grounds, the trial court's modification of the pattern jury instruction on sudden emergency was unlikely to have confused the jury in a negligence action where

LIGON v. STRICKLAND

[176 N.C. App. 132 (2006)]

defendant allegedly swerved his automobile to miss an animal and hit plaintiff, who was walking on the opposite side of the road. However, on remand the court was urged to take care that the sudden emergency instruction focuses on whether the driver was suddenly and unexpectedly confronted with imminent danger to himself or others.

Appeal by defendants from judgment entered 12 April 2004 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 2 March 2005.

*Clarke K. Wittstruck for plaintiff-appellee.*

*Cogburn, Goosmann, Brazil & Rose, P.A., by Andrew J. Santaniello, for defendants-appellants.*

GEER, Judge.

Defendants Matthew Allen Strickland and Gerald Allen Strickland appeal from a verdict in favor of plaintiff James Edd Ligon, Jr. Ligon contended and the jury found that Matthew Strickland ("Strickland"), who was driving the car of his father Gerald Strickland, swerved across a road and struck Ligon as he was walking along the opposite side of the road. Defendants argue on appeal that the trial court erred (1) in denying their motion for a directed verdict on the issue of negligence and (2) in not instructing the jury on the issue of contributory negligence. Because the evidence is undisputed that Strickland crossed the center line and Ligon offered sufficient evidence to permit a reasonable juror to find that Strickland struck Ligon, the trial court properly denied defendants' motion for a directed verdict. We agree with defendants, however, that when the evidence is viewed in the light most favorable to them, the record contains sufficient evidence to warrant submission of the issue of contributory negligence to the jury. Defendants are, therefore, entitled to a new trial.

### Facts

On the evening of 21 December 1997, Ligon went to a ball field with his friend, Charlie Hawkins, where they drank a bottle of liquor. At some point between midnight and 1:00 a.m., Ligon, who was dressed in dark clothes, left Hawkins and began to walk home along Green Valley Road in rural Buncombe County. Ligon was walking along the left hand side of the road facing the traffic. In a field next

to the road, he noticed a white horse that he knew and clapped his hands to get the horse's attention. Ligon testified that he then heard a noise like a "whoosh." He does not remember anything further until he woke up in the hospital.

Strickland, who was called as a witness by Ligon, testified that at approximately 12:30 or 1:00 a.m. on 21 December 1997, he was driving his father's car on Green Valley Road. According to Strickland, approximately a quarter of a mile down the road, he saw an animal in the middle of the road, he swerved off to the left, and he struck a fence five to six feet off the left side of the road with sufficient force to deploy his air bag. Strickland testified that, without stopping, he "got back control" and returned to the road and drove to his house.

He woke his father and told him that he had hit a fence. The two Stricklands then drove back to the scene. Both testified they wanted to make sure that no livestock was escaping through the damaged fence. They found Ligon tangled up in the fence exactly where Strickland had struck the fence. Strickland's father called 911.

James Powell, a firefighter and EMS technician, responded to the accident. Upon arrival, he found Ligon sitting in a fence five to six feet from the road. Powell described Ligon as confused, disoriented, and inebriated. Although Ligon stated that he wanted to get up and walk home, Powell could tell from his observations that Ligon had suffered a broken leg. A state highway patrol trooper, Stan Webb, also responded and, after interviewing Strickland, prepared a report of the accident.

At the hospital, Ligon was treated for a compound fracture of the right leg and multiple abrasions on the right shoulder. At that time, Ligon's blood alcohol level was .08.[1] Ligon's treating orthopedic surgeon testified that the injuries to Ligon's right leg were consistent with a high energy impact from behind by a motor vehicle.

The case was tried in Buncombe County Superior Court beginning 6 January 2004. The trial court denied defendants' motion for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence. Over defendants' objection, the court submitted only two issues to the jury: whether plaintiff was injured by defendants'

---

1. At trial, defendants also pointed to the fact that the hospital report indicated that Ligon had trace amounts of benzodiazepines and opiates in his system. Two doctors, however, testified that they would expect those findings since such medications are routinely used in the emergency room for pain, sedation, and intubation.

LIGON v. STRICKLAND

[176 N.C. App. 132 (2006)]

negligence and, if so, the amount of damages plaintiff was entitled to recover. The jury awarded plaintiff $50,000.00.

On 2 April 2004, the trial court entered judgment against defendants for the amount awarded by the jury and for additional costs incurred by plaintiff. Defendants' motions for judgment not withstanding the verdict and for a new trial were denied in an order dated 29 April 2004. Defendants filed their notice of appeal on 4 May 2004.

### Denial of Defendants' Directed Verdict Motion

[1] Defendants first assign error to the trial court's denial of their motion for a directed verdict at the close of plaintiff's evidence and again at the close of all the evidence. As this Court has explained, however:

> When a motion is made for directed verdict at the close of the plaintiff's evidence, the trial court may either rule on the motion or reserve its ruling on the motion. By offering evidence, however, a defendant waives its motion for directed verdict made at the close of plaintiff's evidence. Accordingly, if a defendant offers evidence after making a motion for directed verdict, "any subsequent ruling by the trial judge upon defendant's motion for directed verdict must be upon a renewal of the motion by the defendant at the close of all the evidence, and the judge's ruling must be based upon the evidence of both plaintiff and defendant."

*Stallings v. Food Lion, Inc.*, 141 N.C. App. 135, 136-37, 539 S.E.2d 331, 332 (2000) (internal citations omitted) (quoting *Overman v. Gibson Prods. Co.*, 30 N.C. App. 516, 520, 227 S.E.2d 159, 162 (1976)). The question before this Court is, therefore, whether the trial court properly denied defendants' motion for a directed verdict at the close of all the evidence.

Defendants argue that a directed verdict was warranted because the record contains insufficient direct or circumstantial evidence of negligence. The party moving for a directed verdict " 'bears a heavy burden under North Carolina law.' " *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) (quoting *Taylor v. Walker*, 320 N.C. 729, 733, 360 S.E.2d 796, 799 (1987)). When a motion for a directed verdict is made, the trial court must determine

> "whether the evidence is sufficient to go to the jury. In passing upon such motion the court must consider the evidence in the light most favorable to the non-movant. That is, the evidence in

favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor. It is only when the evidence is insufficient to support a verdict in the non-movant's favor that the motion should be granted."

*Dockery v. Hocutt*, 357 N.C. 210, 216-17, 581 S.E.2d 431, 436 (2003) (internal quotation marks and citation omitted) (quoting *Rappaport v. Days Inn of Am., Inc.*, 296 N.C. 382, 384, 250 S.E.2d 245, 247 (1979), *overruled on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998)). On appeal, we must uphold the denial of a directed verdict "if there is more than a scintilla of evidence to support each element of the nonmovant's *primae* [sic] *facie* case." *Handex of the Carolinas, Inc. v. County of Haywood*, 168 N.C. App. 1, 9, 607 S.E.2d 25, 30 (2005).

In this case, it is undisputed that Strickland crossed the center line on the road, traveled all the way across the left lane, and drove off the left shoulder, before, as he testified, getting "back control," and returning to his proper lane of travel. N.C. Gen. Stat. § 20-146(d) (2005) provides:

(d) Whenever any street has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

As this Court has previously stated, "[o]ur Courts have consistently held that the violation of this section constitutes negligence *per se*, and when it is the proximate cause of injury or damage, such violation is actionable negligence." *Sessoms v. Roberson*, 47 N.C. App. 573, 579, 268 S.E.2d 24, 28 (1980). *See also Anderson v. Webb*, 267 N.C. 745, 749, 148 S.E.2d 846, 849 (1966) ("When a plaintiff suing to recover damages for injuries sustained in a collision offers evidence tending to show that the collision occurred when the defendant was driving to his left of the center of the highway, such evidence makes out a *prima facie* case of actionable negligence.").

A defendant may, as defendants do in this case, present evidence "that [defendant] was driving on the wrong side of the road for reasons other than his own negligence, but, in such a case, such showing

LIGON v. STRICKLAND

[176 N.C. App. 132 (2006)]

by the defendant serves merely to raise an issue of credibility for the jury to resolve." *Sessoms*, 47 N.C. App. at 579, 268 S.E.2d at 28. Thus, this Court has held that a motion for a directed verdict should be denied when the plaintiff's evidence established that the defendant drove left of center even though the defendant offered evidence that he skidded due to ice. *Brewer v. Majors*, 48 N.C. App. 202, 205, 268 S.E.2d 229, 230-31, *disc. review denied*, 301 N.C. 400, 273 S.E.2d 445 (1980). *See also Anderson*, 267 N.C. at 749, 148 S.E.2d at 849 (reversing nonsuit when the evidence indicated that the defendant had crossed the center line while skidding on wet pavement even though no one survived the accident and there were no eyewitnesses to testify that the skidding was due to negligence); *Sessoms*, 47 N.C. App. at 579, 268 S.E.2d at 28 (reversing grant of directed verdict when the defendant conceded that he crossed the center line, but claimed he did so to avoid hitting the plaintiff since "this evidence alone . . . is sufficient to require the submission of this case to the jury").

Here, defendants contend that Strickland crossed the center line to avoid an animal, identified as possibly being a local black dog who tended to run loose in the neighborhood. Ligon offered evidence that he noticed the dog, but that the dog was in a yard up a hill right before the collision; no one else saw a dog in the area after the collision. Strickland's testimony was vague: he said "something came out in front of [him] in the middle of the road"; he did not recall it darting, but rather it was simply "in the road"; he could only "guess" where he first saw the animal; and he could not recall from which direction the animal had come, although he would "guess" that it came from the right side. He said that his recollection was "very vague" and he was having a "hard time remembering." Thus, there is a question for the jury as to whether an animal was in the road that caused Strickland to cross over the center line.

Even if the presence of the animal were undisputed, plaintiff also offered evidence that Strickland traveled 20 feet across the center line from his legal lane of travel and continued to the fence. Further, there is no evidence suggesting that Strickland attempted to brake or slow down to avoid the animal. Strickland testified:

Q And you saw the animal in your lights and you swerved across the roadway to the left, and that you swerved all the way across the roadway to the left across this section here and hit this fence. (Indicating) Is that your testimony?

A Correct.

LIGON v. STRICKLAND

[176 N.C. App. 132 (2006)]

Q And then after you hit the fence your car kept going and righted itself and you ended up back on the roadway here? (Indicating)

A I don't know if it righted itself.

Q That's what I was confused about. You said you came back to and you were on the road.

A I hit the fence and I must have corrected it. I don't see how it would have righted itself up on the road. The next thing I remember, I was on the road.

He later confirmed that he was traveling 35 to 40 miles per hour, hit the fence with "[m]ore of a sideswipe and [kept] going." He stated: "I never stopped." According to Strickland, once he "got back control" or "gained control," he was again on the road. With respect to Ligon, he testified: "I never saw him." Ligon, however, presented evidence that it was a clear, moonlit night, and he was standing next to the road.

As this Court explained in *Brewer*:

[T]he question to be resolved by the jury is not simply whether defendants' car skidded, but whether [the] defendant [driver] was in the wrong lane, and if so, whether he was there through no fault of his own. It cannot be said that the skidding of the defendants' vehicle immediately preceding the collision establishes a lack of any negligence on [the driver's] part, as a matter of law. It was not only [the driver's] duty to drive in the right-hand lane, but it was also his duty to keep his vehicle under proper control so as to avoid injury to others.

*Brewer*, 48 N.C. App. at 205, 268 S.E.2d at 230-31. Plaintiff's evidence in this case, when viewed in the light most favorable to plaintiff, is sufficient to allow a jury to find that Strickland was negligent in failing to keep his car under control—even if he needed to avoid an animal—and in failing to keep a proper lookout. *See Troy v. Todd*, 68 N.C. App. 63, 66, 313 S.E.2d 896, 898 (1984) (reversing directed verdict when the defendant struck a person walking on the side of the road at night and in dark clothes because "the failure of a motorist to see a person in or upon a roadway at night before striking him constitutes some evidence of negligence"); *Sessoms*, 47 N.C. App. at 580, 268 S.E.2d at 28 (holding that even though the defendant claimed he crossed the center line to avoid the plaintiff, the evidence permitted

an inference that the defendant failed to exercise due care to avoid hitting the plaintiff in that he failed to keep a proper lookout or keep his car under proper control).

Defendants also argue that the evidence is merely speculative that Strickland, as opposed to someone else, struck Ligon. Strickland, however, admitted that Ligon was found entangled in the fence at the precise point where he struck the fence. In addition, the timing of his collision with the fence corresponds with the timing of Ligon being struck by a vehicle from behind. It is not speculation but rather a reasonable inference that only one car during the time frame of 12:30 to 1:00 a.m. ran off the road at the particular spot where Ligon was standing and struck the fence. Further, the state highway patrol trooper's report states that Strickland struck Ligon. While defendants objected to the trial court's admission of the report, they have not challenged that ruling on appeal. This evidence, when viewed in the light most favorable to Ligon, was sufficient to allow a reasonable juror to disbelieve defendants' two vehicle theory and find that Strickland struck Ligon.

Defendants rely upon *Thompson v. Coble*, 15 N.C. App. 231, 189 S.E.2d 500, *cert. denied*, 281 N.C. 763, 191 S.E.2d 360 (1972) to support their argument that a directed verdict should have been granted. In *Thompson*, the plaintiff's evidence showed that the defendant was driving in the center of her lane with her lights on when she heard a noise. *Id.* at 232, 189 S.E.2d at 501. The defendant knew that she had hit something, but had not seen anything prior to hearing the noise. *Id.* Subsequently, using a flashlight, she and her husband found an injured man in a ditch. *Id.* This Court held that a directed verdict was appropriate because "[t]he jury would have to engage in pure speculation of how deceased was injured." *Id.* Similarly, in *Whitson v. Frances*, 240 N.C. 733, 738, 83 S.E.2d 879, 881 (1954), also cited by defendants, there was no evidence at all that the defendant's vehicle left the road, nor was there evidence as to where the deceased was standing when he was struck.

Unlike *Thompson* and *Whitson*, this case involves both (1) evidence permitting an inference that Strickland was negligent by crossing the center line and completely leaving the road and (2) evidence that Ligon, who was on the shoulder on the opposite side of the road, was injured by being struck from behind by a motor vehicle at generally the same time that Strickland was swerving. The question is only whether it was Strickland's car that struck Ligon. *See Walker v. Pless*, 11 N.C. App. 198, 199-200, 180 S.E.2d 471, 472 (1971) (reversing grant

of directed verdict when the plaintiff was struck from behind by an automobile even though the plaintiff could not testify as to what happened other than that the defendant was at the scene immediately after he was hit). As this Court stated in *Sessoms*, 47 N.C. App. at 581, 268 S.E.2d at 29, "[w]e cannot imagine a more clearcut case for the twelve."

### Contributory Negligence

[2] Defendant next assigns error to the trial court's refusal to submit the issue of contributory negligence to the jury. When deciding whether to instruct the jury on contributory negligence,

> [t]he trial court must consider any evidence tending to establish plaintiff's contributory negligence in the light most favorable to the defendant, and if diverse inferences can be drawn from it, the issue must be submitted to the jury. If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court.

*Cobo v. Raba*, 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998) (internal citations omitted).

In this case, the state trooper's report offered as evidence by Ligon, when viewed in the light most favorable to defendants, suggests that Ligon was standing in the road, as opposed to by the fence. The diagram drawn by Trooper Webb to reconstruct the accident has Ligon first being struck by Strickland's vehicle in the middle of the road and then being pushed to the fence. The narrative portion of the report states, consistent with the diagram, that "[t]he pedestrian was struck by Vehicle 1. Vehicle 1 and the pedestrian *continued off the roadway* to the left" before colliding with the fence. (Emphasis added.) In order to continue off the roadway after being struck, one must first be in the roadway. Although Ligon, at trial, challenged the basis for the officer's statement that Ligon was in the road, Ligon was the party who offered the officer's testimony and Ligon relied upon the report in establishing Strickland's negligence.

The jury should have had an opportunity to decide whether Ligon was in fact in the road. When this evidence is considered in addition to evidence that Ligon was walking along a road at night in dark clothes while intoxicated, we believe that the trial court erred in failing to present the issue of contributory negligence to the jury. *Clark v. Bodycombe*, 289 N.C. 246, 253-54, 221 S.E.2d 506, 511-12 (1976) (holding that contributory negligence instruction should have been

given where plaintiff stepped a foot off of the curb into the roadway when she was struck, which created "diverse inferences as to whether plaintiff acted in a reasonable manner and whether her acts proximately caused her injuries").

Defendants are, therefore, entitled to a new trial. Based upon our review of the issues and the evidence, we have concluded that the issues of negligence and contributory negligence "are so intertwined that the ends of justice will be best met by a new trial on both issues." *Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 485, 157 S.E.2d 131, 142 (1967). *See also McMahan v. Bumgarner*, 119 N.C. App. 235, 238, 457 S.E.2d 762, 764 (1995) ("[S]ince the facts and issues surrounding defendant's counterclaim are inextricably intertwined with plaintiff's claim, a new trial should be granted on both claims so that all issues and legal theories that arise from the evidence can be presented to the jury.").

## Sudden Emergency Doctrine

[3] Because there will be a new trial on all issues, we need not fully address defendants' remaining assignment of error regarding the trial court's instruction on the sudden emergency doctrine. Nevertheless, because this issue is likely to recur at the second trial, we address it briefly. We agree with defendants that, based upon the evidence offered at trial, the court properly gave an instruction regarding sudden emergency. Defendants, however, have objected to the trial court's alteration of the pattern jury instruction (N.C.P.I.—Civ. 102.15 (motor veh. vol. 1996)) by adding the following sentence: "This doctrine of sudden emergency only applies when a person is apparently or actually in danger. It does not apply if only a non-human animal is in danger."

In making this alteration, the trial court explained that he wanted to make sure that the jury understood that the doctrine applied only if the driver was acting to avoid danger to himself or to another person and did not apply if the driver swerved only "to save the life of an animal." Defendants do not disagree with the trial court's reasoning, but argue that a jury could misunderstand the instruction to preclude application of the doctrine if the animal in the road was in imminent danger regardless of any accompanying danger to the driver.

We believe it unlikely that the jury interpreted the instruction in that fashion given that the trial court's alteration of the pattern

instruction stated that the doctrine "does not apply if *only* a non-human animal is in danger." (Emphasis added.) Nevertheless, on remand, we urge the trial court to take care to ensure that any sudden emergency instruction that is given focuses on whether the driver was "suddenly and unexpectedly confronted with imminent danger to himself or others." *Holbrook v. Henley*, 118 N.C. App. 151, 153, 454 S.E.2d 676, 677-78 (1995).

New trial.

Judges McGEE and TYSON concur.