KEITH RUSHING AND WIFE, HAZEL S. RUSHING, PLAINTIFFS v. CLEGG ALDRIDGE AND WIFE, EVA E. ALDRIDGE, DEFENDANTS

No. COA10-1059

(Filed 2 August 2011)

**1. Adverse Possession— referee's report—confirmed without jury—issues of fact**

The evidence was sufficient to go to the jury on a claim of adverse possession and the trial court erred by confirming a referee's report without submitting the issues to a jury where there were material issues of fact as to exclusive possession and hostility.

**2. Adverse Possession— issues of fact—exclusivity—hostility**

The trial court did not err by denying defendants' motion for summary judgment in an adverse possession claim where material issues of fact existed as to exclusivity and hostility.

Appeal by defendants from order entered 29 March 2006 by Judge Larry G. Ford, order entered 25 January 2010 by Judge Kevin M. Bridges, and order entered 21 May 2010 by Judge Vance B. Long in

Davidson County Superior Court. Heard in the Court of Appeals 27 January 2011.

> *Kluttz, Reamer, Hayes, Randolph, Adkins, & Carter, L.L.P., by Glenn S. Hayes, for plaintiffs-appellees.*

> *Biesecker, Tripp, Sink & Fritts, L.L.P., by Joe E. Biesecker and Christopher A. Raines, for defendants-appellants.*

GEER, Judge.

This appeal arises out of an action for adverse possession brought by plaintiffs Keith Rushing and Hazel S. Rushing against defendants Clegg Aldridge and Eva E. Aldridge. The Aldridges appeal from the trial court's compulsory order of reference, the order denying their motion for summary judgment and confirming the report of the referee, and the order granting partial summary judgment to the Rushings.

During the proceedings below, the trial court determined that the case involved a complicated boundary issue and that a personal view of the property might be required. The court, therefore, entered a compulsory order of reference pursuant to Rule 53(a)(2) of the Rules of Civil Procedure, requiring that the adverse possession issues be decided by a referee. The referee ultimately filed a report concluding that the Rushings had acquired a portion of the Aldridges' property by adverse possession.

We agree with the Aldridges that the trial court erred in confirming the referee's report. Because the Aldridges preserved their right to a jury trial and because the evidence before the referee indicated that the Aldridges had presented sufficient evidence to send the issue of adverse possession to a jury, the Aldridges retained the right to a jury trial. The trial court did not err, however, in denying the Aldridges' motion for summary judgment, as the Rushings also presented sufficient evidence to send their claim to a jury. Accordingly, we affirm in part and reverse and remand in part for a jury trial on the Rushings' claim for adverse possession.

## Rule 53 and the Reference Procedure

At the outset, a general explanation of Rule 53 and references to referees is necessary to an understanding of this case. Rule 53(a) provides that (1) upon consent of the parties, (2) upon application of one of the parties, or (3) upon its own motion, a trial court may order that a referee determine issues of fact raised by the pleadings and evidence. *Brown v. E. H. Clement Co.*, 217 N.C. 47, 54, 6 S.E.2d 842, 847 (1940).

Any or all of the issues in an action may be referred (except in certain actions related to the termination of a marriage) if the parties consent in writing to a reference. N.C.R. Civ. P. 53(a)(1). If the parties do not consent to a reference, the trial court, upon application of one party or on its own motion, may compel a reference in only four types of cases: (a) where the trial of an issue requires the examination of a long or complicated account; (b) where the taking of an account is necessary for the information of the court before judgment or for carrying a judgment or order into effect; (c) where the case involves a complicated question of boundary, or requires a personal view of the premises; or (d) where a question of fact arises outside the pleadings, upon motion or otherwise, at any stage of the action. N.C.R. Civ. P. 53(a)(2). As our Supreme Court has explained, references serve the "useful purpose" of "aid[ing] and simplify[ing] the work which would otherwise fall upon the court and jury, and often expedit[ing] the litigation and sav[ing] the parties from trouble and expensive trials, and . . . saving in time to witnesses and attorneys." *Jones v. Beaman*, 117 N.C. 259, 261, 23 S.E. 248, 249 (1895).

Rule 53 does not require that the referee conduct a hearing, examine witnesses, receive evidence, or make findings of fact unless the order of reference so directs. *Godwin v. Clark, Godwin, Harris & Li, P.A.*, 40 N.C. App. 710, 713, 253 S.E.2d 598, 601, *appeal dismissed and disc. review denied*, 297 N.C. 698, 259 S.E.2d 295 (1979). However, any witness testimony during the referee proceedings "must be reduced to writing by the referee, or by someone acting under his direction and shall be filed in the cause and constitute a part of the record." N.C.R. Civ. P. 53(f)(3).

Following a reference, the referee is required to prepare a report on the matters submitted to him and to include a decision as to those matters in his report. N.C.R. Civ. P. 53(g)(1). If the trial court has required the referee to make findings of fact and conclusions of law, the referee must include them separately in the report. *Id.* The referee must file the report with the clerk of court for the court in which the action is pending and, unless otherwise directed by the order of reference, must also file a transcript of the proceedings and of any evidence and original exhibits. *Id.*

When the reference occurs by consent of the parties, the parties waive the right to a subsequent jury trial with respect to any of the issues within the scope of the reference. N.C.R. Civ. P. 53(b)(1). When, however, the reference is compulsory, a party may preserve his

right to a jury trial, notwithstanding the referee's report, by taking the following steps:

    a. Objecting to the order of compulsory reference at the time it is made, *and*

    b. By filing specific exceptions to particular findings of fact made by the referee within 30 days after the referee files his report with the clerk of the court in which the action is pending, *and*

    c. By formulating appropriate issues based upon the exceptions taken and demanding a jury trial upon such issues. Such issues shall be tendered at the same time the exceptions to the referee's report are filed. If there is a trial by jury upon any issue referred, the trial shall be only upon the evidence taken before the referee.

N.C.R. Civ. P. 53(b)(2) (emphasis added). The objecting party will then be entitled to a jury trial on the specified issues unless the evidence presented to the referee would entitle one of the parties to a directed verdict. *Dockery v. Hocutt*, 357 N.C. 210, 217, 581 S.E.2d 431, 436 (2003) ("[F]ollowing a compulsory reference, the test to determine a demand for jury trial is the same as that for a motion for directed verdict . . . .").

Rule 53(g)(2) does not, however, differentiate between a reference by consent and compulsory reference when setting out what actions the trial court may take following the filing of the referee's report. The rule provides that the trial court "after hearing may adopt, modify or reject the report in whole or in part, render judgment, or may remand the proceedings to the referee with instructions." N.C.R. Civ. P. 53(g)(2). Nonetheless, our Supreme Court has clarified that

in the context of a compulsory reference the trial court cannot adopt in full a referee's report containing findings of fact requiring assessment of witnesses' credibility. The trial court must, however, evaluate the evidence to determine if, taken in the light most favorable to the party demanding jury trial, the evidence is sufficient to support that party's claim. If the evidence is insufficient as a matter of law to support the party's claim, the trial court may modify the report by striking the offending findings of fact and making its own conclusions, may adopt the report in part exclusive of those findings of fact and make its own conclusions, or may reject the report and then enter judgment.

*Dockery,* 357 N.C. at 219-20, 581 S.E.2d at 437-38.

<u>Facts</u>

Hazel S. Rushing is the record owner of Lot 40 on Lake Shore Drive in the Badin Lake Estates subdivision in Davidson County. Ms. Rushing is married to Keith Rushing. Clegg Aldridge is the record owner of Lot 39, the lot adjacent to Lot 40 to the north. Mr. Aldridge is married to Eva E. Aldridge. Both lots are lakefront properties, abutting Badin Lake to the west and facing Lake Shore Drive to the east.

After the Rushings acquired Lot 40, Mr. Rushing hired Jack Richie to survey the lot so that Mr. Rushing could know the lot's exact boundaries and decide where to position the house he planned to build. Subsequently, sometime in the mid to late 1970s, Mr. Rushing erected a split-rail fence one foot south of what he believed to be the boundary line between Lots 39 and 40, based on the Richie survey. The fence was positioned north of a pre-existing boat ramp on the lakeshore and a pre-existing roadway leading from Lake Shore Drive to the boat ramp. Over the years, the Aldridges and others used the boat ramp and the boat ramp roadway even though it was south of the fence the Rushings had built. At some point prior to 2001, the Rushings' fence rotted and disappeared.

A dispute arose between the Rushings and Aldridges sometime between 2001 and 2003 when the Aldridges undertook construction of a new, larger lake house on Lot 39. Restrictive covenants called for a 10-foot setback between the Aldridge house and the Rushing-Aldridge property line. The Aldridges hired Jones and Wall to survey the property in 2001. Jones and Wall identified the true boundary between Lots 39 and 40 and indicated that the line marked by the fence that had been installed years ago by the Rushings was in fact on the Aldridges' property. The distance between the Aldridge house and the Rushing fence line was less than 10 feet, but there is more than 10 feet between the Aldridge house and the property line identified by the Jones and Wall survey.

In 2003, the Aldridges installed their own fence along the Jones and Wall line. At some point after the Jones and Wall survey, the Rushings hired Thomas Fields to conduct another survey. The Fields survey was consistent with the Richie survey.

On 6 October 2003, the Rushings commenced an action seeking a determination of the boundary line between their property and the Aldridges' property, a declaration that the Rushings acquired owner-

ship of a portion of the Aldridges' property by adverse possession, and damages for trespass. According to the Rushings, until the Aldridges installed a fence in 2003, the Rushings exclusively maintained the area south of their fence line, even after the fence rotted. The Aldridges filed an answer and counterclaim alleging that the Rushings were trespassing and seeking "a court order that [the Rushings] not trespass on [the Aldridges'] land any more." The Aldridges insist that they knew the disputed property was theirs all along, but they had never openly objected to the Rushings' fence being on their land because it did not interfere with their use of the boat ramp roadway and because the fence looked good.

On 20 March 2006, the matter came on for hearing. The pretrial conference had been conducted, and the parties had nearly completed jury selection when the trial court *sua sponte* decided to order a reference because the case involved a complicated boundary issue and might require a personal view of the premises. Accordingly, pursuant to Rule 53(a)(2)(c), the court entered a compulsory order of reference and appointed a referee "to view the premises which are the subject of this action and to resolve all issues raised by the pleadings with respect to the complicated issues involving the claims to the common boundary between the parties . . . ." Both sides objected to the compulsory order of reference at the time it was made.

Subsequently, the referee conducted evidentiary hearings on the boundary line and adverse possession issues and bifurcated the damages issues. On 18 February 2009, the referee filed his report containing 97 findings of fact and nine conclusions of law. The referee concluded that the Rushings had acquired a portion of the Aldridges' property by adverse possession and, as a result, the Aldridges had trespassed and violated the setback provisions of the subdivision's restrictive covenants. On 17 April 2009, the Aldridges filed exceptions to the report and requested a jury trial. The Aldridges also filed a motion for summary judgment on 17 April 2009, and the Rushings filed a motion to confirm the referee's report on 24 June 2009.

Following a hearing, the trial court entered an order on 25 January 2010 denying the Aldridges' motion for summary judgment and confirming the referee's report with the exception of a single finding of fact, which stated that both parties mistakenly believed the true boundary line between their respective properties to be along the fence line determined by Mr. Rushing between 1975 and 1977. The trial court ordered that a trial proceed on damages.

The Rushings later moved for summary judgment or partial summary judgment on damages. By order entered 21 May 2010, the trial court granted partial summary judgment to the Rushings, establishing that the Rushings are entitled to fee simple title to a certain portion of the property. The Rushings subsequently voluntarily dismissed their remaining damages claim. The Aldridges timely filed notice of appeal to this Court.

## Discussion

### I. Preservation of Jury Trial Right

[1] We first address the Aldridges' contention that the trial court erred in confirming the referee's report. Although *Brown v. Broadhurst*, 197 N.C. 738, 150 S.E. 355 (1929), long predates the current Rules of Civil Procedure, Rule 53 essentially codified the preexisting procedure described in *Brown*.

*Brown* involved a dispute between the supplier of construction materials, the plaintiff, and the defendant building contractor and defendant lot owner. *Id.* at 738, 150 S.E. at 355. The trial court referred one of the issues, a request for an accounting between the lot owner and contractor, to a referee. *Id.* at 739, 150 S.E. at 355. The lot owner objected and demanded a jury trial as to the accounting. *Id.*

After the referee filed his report, the lot owner filed exceptions to the report, tendered issues to be tried by the jury, and demanded a jury trial. *Id.* The trial court denied the lot owner's request for a jury trial, overruled all the exceptions to the referee's report, and entered judgment confirming the report. *Id.* The lot owner appealed from the judgment confirming the report. *Id.*

On appeal, the Supreme Court held:

> We think it was error for the trial court to confirm the report of the referee at the August Term, without first submitting an appropriate issue to the jury, as the defendant had duly preserved her right to have the controverted matter determined in this way. The appealing defendant objected and excepted to the order of reference at the time it was made, and, on the coming in of the report, she filed exceptions thereto in apt time, properly tendered an appropriate issue and demanded a jury trial on the issue tendered and raised by the pleadings. This preserved her right to have the matter submitted to a jury.

*Id.* The Court went on to order a new trial. *Id.* at 740, 150 S.E. at 356.

Here, as in *Brown,* the trial court confirmed the report of the referee without submitting the issues to a jury, even though the Aldridges duly preserved their right to a jury trial pursuant to the requirements of Rule 53(b)(2)(a)-(c). Under *Dockery,* 357 N.C. at 217, 581 S.E.2d at 436, unless the evidence presented to the referee was such that a directed verdict in favor of the Rushings was proper, the Aldridges were entitled to a jury trial. *See also Solon Lodge No. 9 Knights of Pythias Co. v. Ionic Lodge Free Ancient & Accepted Masons No. 72 Co.,* 245 N.C. 281, 289, 95 S.E.2d 921, 927 (1957) (holding that referee's report does not deprive party of constitutional right to jury trial on issues of fact raised by pleadings and by party's exceptions to referee's findings of fact).

In order to determine whether the Aldridges are entitled to a jury trial on the issue of adverse possession, we must first decide whether the evidence before the referee was sufficient to raise an issue of fact. The standard of review, as with a motion for a directed verdict, is

"whether the evidence is sufficient to go to the jury. In passing upon such motion the court must consider the evidence in the light most favorable to the non-movant. That is, the evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor. It is only when the evidence is insufficient to support a verdict in the non-movant's favor that the motion should be granted."

*Ligon v. Strickland,* 176 N.C. App. 132, 135-36, 625 S.E.2d 824, 828 (2006) (quoting *Dockery,* 357 N.C. at 216-17, 581 S.E.2d at 436). This Court upholds the denial of a directed verdict if there is more than a scintilla of evidence to support each element of the non-movant's prima facie case. *Id.* at 136, 625 S.E.2d at 828.

Accordingly, in this case, we review the evidence in the light most favorable to the Aldridges, with all evidence in favor of the Aldridges deemed true, all conflicts in the evidence resolved in the Aldridges' favor, and giving the Aldridges the benefit of every inference reasonably to be drawn in their favor. *Id.* at 135-36, 625 S.E.2d at 828. Applying the directed verdict standard of review, *id.* at 136, 625 S.E.2d at 828, it is only when the evidence is insufficient to support a verdict in the Aldridges' favor that the referee's report may be confirmed.

In North Carolina, to acquire title to land by adverse possession, the claimant must "show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period . . . under known and visible lines and boundaries." *Merrick v. Peterson*, 143 N.C. App. 656, 663, 548 S.E.2d 171, 176, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001). Only two of those elements are at issue in this case: exclusivity and hostility.

A.  Exclusivity

"Exclusivity" requires that " 'other people . . . not make similar use of the land during the required statutory period.' " *Jernigan v. Herring*, 179 N.C. App. 390, 394, 633 S.E.2d 874, 878 (2006) (quoting *McManus v. Kluttz*, 165 N.C. App. 564, 574, 599 S.E.2d 438, 446 (2004)), *disc. review denied sub nom. Jernigan v. Rayfield*, 361 N.C. 355, 645 S.E.2d 770 (2007). In this case, there was evidence that in the 1970s, the Rushings erected a fence on the north side of the boat ramp roadway, and that both the fence and the boat ramp roadway were on the Aldridges' land. There was also evidence that over the years, the Aldridges and others used the boat ramp roadway, as did the Rushings.

According to the Aldridges, they did not ask permission to use the boat ramp roadway, and neither the Rushings nor the fence interfered with the Aldridges' or others' use of the roadway or the ramp. In addition, the Aldridges point to evidence that they claim shows the parties shared a garden on both sides of the fence primarily after 1991: Mr. Rushing testified that Mr. Aldridge "had some ['garden stuff'] on each side of that boundary" and that they "used it together."

Viewed in the light most favorable to the Aldridges, this evidence created a material issue of fact as to whether the Rushings' possession of the disputed land was exclusive. *See State v. Brooks*, 275 N.C. 175, 183, 166 S.E.2d 70, 75 (1969) (noting that "one cannot gain title by adverse possession to unenclosed land by using it for grazing where others made similar use of the land during the statutory period, even without his consent, since his possession is not exclusive"). The Rushings were thus not entitled to a directed verdict on the issue of exclusivity.

B.  Hostility

With respect to "hostility," this Court has explained:

> The hostility requirement "does not import ill will or animosity but only that the one in possession of the lands claims the exclu-

sive right thereto." *State v. Brooks,* 275 N.C. 175, 180, 166 S.E.2d 70, 73 (1969). " 'A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.' " *Daniel v. Wray,* 158 N.C. App. 161, 172, 580 S.E.2d 711, 719 (2003) (quoting *Dulin v. Faires,* 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966)). The hostility element may be satisfied by a showing that "a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto[.]" *Walls v. Grohman,* 315 N.C. 239, 249, 337 S.E.2d 556, 562 (1985). However, the hostility requirement is not met if the possessor's use of the disputed land is permissive. *See, e.g., New Covenant Worship Ctr. v. Wright,* 166 N.C. App. 96, 104, 601 S.E.2d 245, 251-52 (2004) (finding hostility requirement not satisfied because the possessor's use of the disputed property was permissive); *McManus v. Kluttz,* 165 N.C. App. 564, 573-74, 599 S.E.2d 438, 446 (2004) (finding hostility requirement satisfied because the possessor's use of the disputed property was not permissive).

*Jones v. Miles,* 189 N.C. App. 289, 292-93, 658 S.E.2d 23, 26 (2008).

In this case, as to hostility, the Aldridges contend that they allowed the Rushings to make use of the land because they were being neighborly. They also point to evidence that the Rushings knew they were only using the land pursuant to the Aldridges' permission— the Rushings moved their vehicles off the boat ramp roadway when the Aldridges wanted to use the roadway, and, at some point, Mr. Rushing killed a sweet gum tree located on the south side of the fence in the disputed area and offered to the Aldridges that he remove it at his own expense.

Given this evidence, which could be viewed as tending to show that the Rushings recognized that they used the land with the Aldridges' permission and treated the Aldridges as the true owners, we conclude that the Rushings were not entitled to a directed verdict on the issue of hostility. *See New Covenant Worship Ctr.,* 166 N.C. App. at 104, 601 S.E.2d at 251-52 (holding ministry's alleged adverse possession of chapel property was not hostile, as ministry acknowledged continuing right of purported land owner by asking for and receiving consent from her to remove pews from chapel building); *Orange Grocery Co. v. CPHC Investors,* 63 N.C. App. 136, 139, 304 S.E.2d 259, 261 (1983) (holding plaintiff showed no evidence of claim of hostile use where, although plaintiff paved parking lot and

encroached 12 inches onto defendant's lot, this action did not suffice to put defendant on notice of any adverse use, and, moreover, public used disputed section of land as driveway).[1]

We hold that since the Aldridges preserved their right to a jury trial and the evidence, viewed in the light most favorable to the Aldridges, was sufficient to go to the jury on the claim of adverse possession, the trial court erred in confirming the referee's report. Because we reach this conclusion, we need not address the Aldridges' arguments regarding the sufficiency of the evidence to support certain findings made by the referee.

## II. The Aldridges' Motion for Summary Judgment

[2] The Aldridges further contend that not only did the trial court err in confirming the referee's report, but the trial court should have granted the Aldridges' motion for summary judgment on the question of adverse possession. "On a motion for summary judgment, defendants as movants would have had the burden to show that plaintiff[s] could not adduce evidence of an essential element of [their] claim and that no genuine issue of material fact existed, thereby entitling defendants to judgment as a matter of law." *Dockery*, 357 N.C. at 216, 581 S.E.2d at 435. The Aldridges again challenge only two of the elements of adverse possession: exclusivity and hostility.

### A. Exclusivity

We first consider whether the Rushings presented sufficient evidence of the element of exclusivity to defeat the Aldridges' motion for summary judgment. There was evidence that the Rushings believed they owned the disputed land, were acting as if they owned it, and were the ones giving permission to others to enter the land and use the boat ramp roadway. As for the use of the boat ramp roadway, Mr. Rushing testified that the Aldridges "got permission" to use the ramp; the Rushings would "move [their] cars and *let them* come in." (Emphasis added.) Although he indicated that the Aldridges would not ask permission if the Rushings were not home, he also said, "Well, we were neighbors. There was no question about them using the boat

---

1. Although *Orange Grocery* involved an action for prescriptive easement, the analysis is applicable because of the similarity between the elements required for adverse possession and a prescriptive easement. For example, both *Warmack v. Cooke*, 71 N.C. App. 548, 552, 322 S.E.2d 804, 807 (1984), *disc. review denied*, 313 N.C. 515, 329 S.E.2d 401 (1985), a prescriptive easement case, and *Jones*, 189 N.C. App. at 292, 658 S.E.2d at 26 cite the same Supreme Court case, *Dulin*, 266 N.C. at 261, 145 S.E.2d at 875, for the definition of a hostile use.

ramp." He further indicated "yeah," the Aldridges had the "privilege"of using the ramp when they were not there.

In addition, although the Aldridges have pointed to evidence related to shared gardening, viewing the evidence in the light most favorable to the Rushings suggests that the Aldridges did not actually share the disputed land for gardening purposes: Mr. Rushing testified that the Aldridges gardened on the north side of the fence, and the Rushings gardened on the south side.

As this Court has explained, exclusive possession is denoted " 'by the exercise of acts of dominion over the land, in making the ordinary use . . . , such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser.' " *Jernigan*, 179 N.C. App. at 394, 633 S.E.2d at 878 (quoting *New Covenant Worship Ctr.,* 166 N.C. App. at 103-04, 601 S.E.2d at 251). Thus, the exclusion element "contemplates the exclusive use of the ordinary functions of the type of land at issue, given its present state." *Id.*

Taking this evidence together and viewing it in the light most favorable to the Rushings, we conclude that a material issue of fact existed as to the element of exclusivity. Although there was evidence that neighbors used the boat ramp roadway, the evidence also tended to show that the use was pursuant to the permission of the Rushings. The boat ramp evidence and the evidence that the Rushings gardened and maintained their side of the fence shows ordinary use of the land in the character of a true owner. *See Fed. Paper Bd. Co. v. Hartsfield,* 87 N.C. App. 667, 673, 362 S.E.2d 169, 172 (1987) (holding it was for jury to decide whether acts shown by evidence constituted adverse possession when evidence showed that plaintiff had kept lines as marked by previous survey, had cut timber, and had replanted seedlings, but, on other hand, defendants knew boundaries of land claimed by them, and they continued to go on land and cut timber). *See also Lancaster v. Maple St. Homeowners Ass'n,* 156 N.C. App. 429, 439-40, 577 S.E.2d 365, 373-74 (noting that "[e]ven if some evidence was presented that the 'general public' had used the land, there is evidence to the contrary"; evidence that, *inter alia,* claimants put private parking signs on property, asked people to leave property, and invited guests onto property was "sufficient indicia of exclusivity for the jury to determine whether the [claimants] claimed . . . exclusively against the true owners"), *appeal dismissed and disc. review denied in part,* 357 N.C. 251, 582 S.E.2d 272, *aff'd per curiam in part,* 357

N.C. 571, 597 S.E.2d 672 (2003); *Warmack*, 71 N.C. App. at 553-54, 322 S.E.2d at 808-09 (holding neighborly relations would not necessarily bar claim for adverse possession; persons claiming area adversely are not compelled to bar all other persons at all times from traversing property in dispute).

We are not persuaded by the cases the Aldridges rely upon to show the Rushings' possession was non-exclusive. *See Brooks*, 275 N.C. at 183, 166 S.E.2d at 75 (holding that one cannot gain title by adverse possession to *unenclosed* land by using it for grazing where others made similar use of land during statutory period, even without consent, since possession is not exclusive); *Hayes v. Rogers*, 155 N.C. App. 220, 573 S.E.2d 775, 2002 WL 31895016, *3, 2002 N.C. App. LEXIS 2621, *7-8 (Dec. 31, 2002) (unpublished) (holding, where evidence only showed that claimant planted tree in early 1970s and performed yard maintenance to part of strip including area around tree, and where true owners also performed yard maintenance in strip, that there was no evidence that claimant's actions "were actual, open, hostile, or continuous"), *appeal dismissed and disc. review denied*, 357 N.C. 164, 579 S.E.2d 578 (2003). In contrast to *Brooks*, the Rushings enclosed the disputed land with a fence, and there was evidence that they allowed others to enter the land not freely, but with permission. And, in contrast to *Hayes*, which is unpublished and therefore not controlling, there was evidence that the Aldridges did not perform any maintenance on the south side of the fence. The trial court, we conclude, did not err in denying the Aldridges' motion for summary judgment on the ground that the Rushings failed to produce sufficient evidence of exclusivity.

B. Hostility

With respect to hostility, the evidence showed the Rushings erected a fence across the Aldridges' land in the 1970s, north of the actual boundary line separating lots 39 and 40, based on the property line identified in a survey conducted for Mr. Rushing. Mr. Rushing testified in his deposition that he never verbally told the Aldridges that he was claiming the land because he "didn't have to, [he] had a fence there" and "everybody respected that as the property line." He also testified at the hearing that he gave "permission" for the Aldridges and others to use the ramp.

Viewed in the light most favorable to the Rushings, this evidence—that the Rushings mistakenly believed the land was theirs, that they erected the fence without asking for the Aldridges' permis-

sion, that the fence marked what they believed to be the boundary line and showed others what that boundary line was, and that they gave permission for others to use the land on their side of the fence—was sufficient to create an issue of fact for the jury as to the element of hostility. *See Jones*, 189 N.C. App. at 292-93, 658 S.E.2d at 26 (holding hostility element may be satisfied by showing landowner, acting under mistake as to true boundary line, takes possession of land believing it to be his own and claims title to it); *Lancaster*, 156 N.C. App. at 438, 577 S.E.2d at 372 (holding that element of hostility was properly submitted to jury when evidence showed claimants felt disputed property was theirs, used property as their own and believed they had right to use it, never asked permission to use land or make improvements, and installed posts to keep people from parking on property).

Although the Aldridges argue the presumption of permissive use, this presumption is not relevant in this case given the evidence that the Rushings were acting under a mistake as to the true boundary. *See Walls*, 315 N.C. at 249, 337 S.E.2d at 562 (holding hostility element may be satisfied by showing that landowner, acting under mistake as to true boundary between his property and that of another, takes possession of land believing it to be his own and claims title thereto).

The Aldridges also insist that the Rushings failed to manifest their intent to claim the land, and point out that an adverse possessor's "secret[]" intent is not enough because the true owner must be put on "actual or constructive notice of the possessor's hostile intent." *Jones*, 189 N.C. App. at 293, 294, 658 S.E.2d at 26, 27. In *Jones*, the Court held there was insufficient evidence of hostility when the undisputed evidence showed the claimants' possession was hostile for 11 years, but afterward, the owners gave the claimants permission to use the land. *Id.* at 295, 658 S.E.2d at 27-28. After that time, there was no indication that the claimants ever expressly rejected the grant of permission or otherwise took affirmative steps to put the owners back on actual or constructive notice that the claimants intended to continue to possess the disputed tract in a manner hostile to the interests of the owners. *Id.* The Court went on to note that after several years of permissively using the land, the claimants "first *manifested their hostile intent* around July 2004 *when they erected a fence around the disputed tract*." *Id.*, 658 S.E.2d at 28 (emphasis added).

*Jones* indicates that the erection of a fence may be a sufficient manifestation of hostile intent. Indeed, in arguing that "[a] fence

could be erected for any number of reasons," the Aldridges implicitly acknowledge that a jury could find that one reason for the fence was the Rushings' intent to " 'manifest and give notice that the use [of the land within the fence was] being made under claim of right.' " *Id.* at 292, 658 S.E.2d at 26 (quoting *Daniel,* 158 N.C. App. at 172, 580 S.E.2d at 719). *See also Lake Drive Corp. v. Portner,* 108 N.C. App. 100, 103, 422 S.E.2d 452, 454 (1992) ("The requirement that possession be 'hostile' simply connotes that claimant asserts exclusive right to occupy the land."). The Aldridges do not point to any evidence that, after the Rushings manifested their hostile intent by erecting a fence, the Aldridges gave the Rushings permission to use the land, which would, under *Jones,* have required the Rushings to reject that permission or put the Aldridges back on notice that they were nonetheless still continuing to claim the land.

The Aldridges further contend that both the Rushings' and the Aldridges' actions established neighborliness rather than hostility by the Rushings. *Warmack,* however, indicates that even where there is evidence of neighborliness, that evidence will not necessarily defeat a claim for adverse possession where there is other evidence of hostility. *See* 71 N.C. App. at 553-54, 322 S.E.2d at 808-09 (explaining that where neighbors used path from time to time, claimants did not fail to show hostility; Court rejected argument that "persons claiming an area adversely and hostile are compelled to bar all other persons at all times from traversing the property in dispute" because "[i]f such were the case, neighborly relationships would be destroyed"). In light of *Warmack,* we conclude that because the Rushings presented other evidence of hostility, evidence of neighborliness on the part of both parties did not preclude the claim from being heard by the jury.

The Aldridges' reliance on *Atlantic Coast Line Railroad Co. v. Town of Ahoskie,* 202 N.C. 585, 163 S.E. 565 (1932), is misplaced. The Aldridges contend that under *Atlantic Coast Line,* the Rushings' use of the disputed land was a mere neighborly accommodation. In that case, the Court held that there was insufficient evidence that the defendant town adversely possessed property owned by the plaintiff railroad company:

Neighborly conduct either on the part of a person or corporation ought not to be so construed as to take their property, unless it has such probative force as to show adverse user [sic] for twenty years. Much of defendant's evidence is in the nature of omissions by plaintiff railroad company in not being unneighborly and chasing trespassers off its property. The fact that this was not done,

cannot be held for acquiescence or adverse user [sic] on the part of defendants.

*Id.* at 592, 163 S.E. at 568. Thus, in *Atlantic Coast Line*, the Court indicated that the railroad company's failure to chase trespassers (members of the public or town) off the property was not sufficient to show that the town's claim was adverse.

In pointing out that the Rushings, in this case, did not chase people off the disputed property, the Aldridges misconstrue *Atlantic Coast Line*. The Aldridges assert that the Rushings' neighborliness, as a matter of law, defeats the element of hostility. *Atlantic Coast Line*, however, merely shows that the Aldridges' failure to order the Rushings to remove the fence and dig up their gardens could not be relied upon by the Rushings to support their adverse possession. *Atlantic Coast Line* does not establish as a matter of law that because the Aldridges did not object to the fence and because the Rushings did not object to the Aldridges using the boat ramp or boat ramp roadway, the Rushings did not engage in hostile use of the land.

In any event, as we have already determined, there was evidence that the Rushings installed the fence with the mistaken belief that it marked the true property line, and, in addition, the installation of the fence manifested their hostile intent, putting the Aldridges on notice of their claim of right. We, therefore, cannot conclude that the trial court erred in denying the Aldridges' motion for summary judgment on the ground that the Rushings failed to produce sufficient evidence of hostility.

## Conclusion

We affirm the trial court's denial of the Aldridges' motion for summary judgment. Because material issues of fact exist and because the Aldridges properly preserved their right to a trial by jury, the trial court erred in confirming the referee's report. We hold that the Aldridges are entitled to a jury trial to resolve the factual issues. Therefore, we reverse and remand this case to the trial court for a jury trial on the issue of adverse possession.

Affirmed in part; reversed and remanded in part.

Judges STEPHENS and McCULLOUGH concur.